EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

*Attorneys for Defendants*
*Nike, Inc. and FullStory, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BURHAAN SALEH, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NIKE, INC., and FULLSTORY, INC.,<br><br>    Defendants. | Civil Case No.: 2:20-cv-09581-FLA-RAO<br><br>**DEFENDANTS NIKE, INC. AND FULLSTORY, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)**<br><br>Hearing Date:  March 5, 2021<br>Hearing Time: 1:30 p.m.<br>Honorable Fernando L. Aenlle-Rocha |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

II.  ALLEGATIONS OF THE COMPLAINT ...................................................... 3

    A.  Nike's Use of FullStory's Software and Services ............................... 3

    B.  Allegations Related to Plaintiff ............................................................ 4

III.  LEGAL STANDARD .......................................................................................... 5

IV.  ARGUMENT ........................................................................................................ 6

    A.  FullStory Should Be Dismissed for Lack of Personal Jurisdiction ...... 6

        1.  Plaintiff Does Not and Cannot Establish General Jurisdiction Over FullStory ................................................................................... 7

        2.  Plaintiff Does Not and Cannot Establish Specific Jurisdiction Over FullStory ................................................................................... 7

            a)  The First Amended Complaint Contains No Allegations of Purposeful Direction by FullStory ........... 8

            b)  There Are No Allegations that Plaintiff's Claims Arise Out of or Relate to Forum-Related Activities by FullStory. ....................................................................... 9

            c)  The Exercise of Jurisdiction Over FullStory in California Is Not Reasonable ......................................... 10

    B.  Every Claim in the First Amended Complaint Fails as a Matter of Law. .......................................................................................................... 11

        1.  The Court Should Dismiss Count 1 Because the First Amended Complaint Fails To State a Claim Under Section 631 ............. 11

a)   FullStory and Nike Did Not Violate Section 631 Because Nike, Using FullStory's Technology, Was a Party to Plaintiff's Purported Communications. ........... 11

b)   FullStory and Nike Did Not Violate Section 631 Because the Software Did Not Collect the "Contents" of Plaintiff's Purported Communications...................... 15

c)   The Conduct Alleged Did Not Violate Section 631 Because It Was Disclosed in Nike's Privacy Policy, Relied on by the First Amended Complaint. ................. 17

2.   The Court Should Dismiss Count 2 Because Plaintiff Lacks Standing To Assert Such a Claim and Because the FAC Fails To State a Claim Under Section 635. ...................................... 19

a)   Plaintiff Lacks a Private Right of Action and Standing To Assert a Claim Under Section 635........................... 19

b)   FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping. ................... 20

c)   Even if FullStory's Code Was a Covered Device, Nike's Conduct Is Not Prohibited by Section 635. ....... 22

3.   The Court Should Dismiss Count 3 Because Plaintiff Cannot State a Claim for Invasion of Privacy Under the California Constitution. ......................................................................... 23

V.   CONCLUSION............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*,
   480 U.S. 102 (1987) ................................................................. 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................. 5

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017) ............................................................. 7

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ................................................. 9

*Brainerd v. Governors of the Univ. of Alta.*,
   873 F.2d 1257 (9th Cir. 1989) ................................................. 5

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
   137 S. Ct. 1773 (2017) ................................................... 6, 9, 10

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................... 15

*Catsouras v. Dep't of Cal. Highway Patrol*,
   181 Cal. App. 4th 856 (2010) ................................................ 24

*Cohen v. Casper Sleep, Inc.*,
   2018 WL 3392877 (S.D.N.Y. July 12, 2018) ......................... 19

*Cole v. Sunnyvale*,
   2010 WL 532428 (N.D. Cal. Feb. 9, 2010) .............................. 2

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .............................................................. 6, 7

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008) ............................................................... 20

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ........................................................... 23

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ............................................................. 11, 13, 14

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015) ........................................................ 21

*In re Facebook Internet Tracking Litig.*,
   263 F. Supp. 3d 836 (N.D. Cal. 2017) ................................................... 22, 24

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
   905 F.3d 597 (9th Cir. 2018) ..................................................................... 8

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...................................................... 18

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ..................................................................... 5

*In re Google, Inc. Priv. Pol'y Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................ 25

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (1994) .............................................................................. 23, 24

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................... 25

*In re Lenovo Adware Litig.*,
   2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .......................................... 19

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................. 23, 25

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................. 6

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ................................................................. 21

*Membrila v. Receivables Performance Management, LLC*,
   2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ........................................ 13, 14

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ..................................................................... 5

*In re Palmdale Hills Prop., LLC*,
 654 F.3d 868 (9th Cir. 2011) ................................................................... 6, 12

*Panavision Int'l, L.P. v. Toeppen*,
 141 F.3d 1316 (9th Cir. 1998) ...................................................................... 5

*Rogers v. Ulrich*,
 52 Cal. App. 3d 894 (1975) ..................................................................*passim*

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) .............................................................*passim*

*Scott v. Breeland*,
 792 F.2d 925 (9th Cir. 1986) ....................................................................... 6

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) ............................................................................... 20

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
 2018 WL 10689420 (N.D. Cal. July 9, 2018) ............................................. 8

*Taus v. Loftus*,
 40 Cal. 4th 683 (2007) ............................................................................... 24

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
 315 F. Supp. 3d 1147 (C.D. Cal. 2018) ....................................................... 5

*United States v. Reed*,
 575 F.3d 900 (9th Cir. 2009) ..................................................................... 15

*Urbaniak v. Newton*,
 226 Cal. App. 3d 1128 (1991) ................................................................... 24

*Walden v. Fiore*,
 571 U.S. 277 (2014) .......................................................................... 8, 9, 10

*White v. Lee*,
 227 F.3d 1214 (9th Cir. 2000) ..................................................................... 6

*Yunker v. Pandora Media, Inc.*,
 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .......................................... 25

*In re Zynga Privacy Litig.*,
 750 F.3d 1098 (9th Cir. 2014) .............................................................. 15, 16

**Statutes**

18 U.S.C. § 2512 ................................................................................... 19, 20

Cal. Pen. Code § 631 .................................................................................. *passim*

Cal. Pen. Code § 637.2(a) ............................................................................. 19

**Other Authorities**

*Device*, Merriam-Webster.com Dictionary, https://www.merriam-
    webster.com/dictionary/device (last visited Nov. 13, 2020) ....................... 21

*Device*, Oxford English Dictionary, https://www.oed.com/view/Entry/51464
    (last visited Nov. 13, 2020) ....................................................................... 21

FREEDOM TO TINKER (Nov. 15, 2017), https://freedom-to-
    tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-
    session-replay-scripts ........................................................................... 16, 24

*Nike Privacy Policy*, Nike, https://agreementservice.svs.nike.com/
    rest/agreement?agreementType=privacyPolicy&uxId=com.nike.commerc
    e.nikedotcom.web&country=US&language=en&requestType=redirect
    (last modified Oct. 12, 2020) ................................................................. 18, 19

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 5, 2021 at 1:30 p.m., or as soon thereafter as available, in the courtroom of the Honorable Fernando Aenlle-Rocha, located at 350 W. 1st Street, 6th Floor, Courtroom 6B, Los Angeles, CA 90012, Defendants FullStory, Inc. ("FullStory) and Nike, Inc. ("Nike") (collectively, "Defendants"), will and hereby do move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing with prejudice Plaintiff's First Amended Complaint (Dkt. No. 24) ("FAC") as asserted against FullStory and Nike. FullStory also will, and hereby does move pursuant to Federal Rule of Civil Procedure 12(b)(2) for an order dismissing FullStory from this action for lack of personal jurisdiction. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 7, 2020.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Nike is a worldwide footwear and apparel company that operates a retail website at Nike.com. Nike employs the services of co-defendant FullStory, a service provider for retail and commercial website operators like Nike. FAC ¶¶ 7, 10. As alleged, companies like Nike deploy FullStory's software on their websites in order to understand and improve their websites' functionality. Complaint (Dkt. No. 1) ("Compl.") ¶ 15.[1] This, in turn, allows Nike to improve the user experience for visitors to

---

[1] In the FAC, Plaintiff deleted his allegation that FullStory's software "help[s] businesses improve their website design and customer experience." Compl. ¶ 15. But when assessing an amended complaint, "[t]he court may also consider the prior allegations as

its site. *Id.* For FullStory's software to work, Nike must add FullStory's software code to Nike's website. FAC ¶ 24. That software code collects certain usage information from visitors to Nike's website, and the information is used to inform the analytics that FullStory provides to Nike. *Id.* ¶ 25. Plaintiff does not allege this information is used for any other purpose.

Put simply, this case is about a retailer's ability to understand how its website is functioning and how users are interacting with the website to ensure a smooth, error-free experience for the website visitors. Plaintiff seeks to criminalize this behavior. But Plaintiff's arguments that this routine internet functionality amounts to unlawful wiretapping and eavesdropping are meritless. As such, the Court should dismiss the FAC with prejudice for the reasons described below.

*First*, the Court lacks personal jurisdiction over FullStory, a Georgia-based company incorporated in Delaware. The FAC is devoid of any allegations of forum-related conduct by FullStory, and the assertion of personal jurisdiction over FullStory here is contrary to the Supreme Court's recent holdings. So FullStory should be dismissed from this action.

*Second*, Plaintiff has failed to state any claim under which he is entitled to relief. The California Invasion of Privacy Act ("CIPA") claims fail for multiple reasons. As to Plaintiff's Section 631 claim, Nike and FullStory were the recipients of Plaintiff's communications and thus fit within CIPA's well-recognized party exception. FullStory was not a third party to the communication, but instead an extension of Nike, thus neither Nike nor FullStory can be held liable for eavesdropping under the party exception. In addition, Plaintiff has failed to plausibly allege that the "contents" of his communications

part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the . . . Amended Complaint plausibly suggests an entitlement to relief, as required under [*Ashcroft v.*] *Iqbal*." *Cole v. Sunnyvale*, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) (citation omitted).

were intercepted, an essential element of a Section 631 claim. And none of the data collection alleged in the FAC is surreptitious, as required by Section 631, given that everything complained of is fully disclosed in Nike's privacy policy (which is relied on in the FAC). As a result, neither Nike nor FullStory can be liable under Section 631, and Nike cannot be liable for allegedly aiding and abetting or conspiring with FullStory to violate the statute. Plaintiff also cannot state a claim under Penal Code Section 635, for trafficking in or possessing a wiretap device, because Plaintiff has not adequately alleged an underlying violation of that section, which is required both to establish a private right of action and to support standing to bring a Section 635 claim. Plaintiff's Section 635 claim fails on the additional ground that FullStory's software-based service is not a "device" which is "primarily or exclusively designed or intended for eavesdropping," as required.

*Third*, Plaintiff has failed to state a claim for invasion of privacy under the California Constitution. Plaintiff cannot plausibly allege that he held a reasonable expectation of privacy in the information Defendants allegedly collected because Plaintiff himself intentionally sent it to the Defendants. Nor has Plaintiff plausibly alleged that the data collection at issue constitutes an "egregious breach of social norms." As a matter of law, such routine collection of data for analytics purposes cannot rise to the requisite level for invasion of privacy.

For these reasons, the Court should dismiss the FAC in its entirety.

## II.   ALLEGATIONS OF THE COMPLAINT

### A.   Nike's Use of FullStory's Software and Services

FullStory is a Delaware corporation headquartered in Atlanta, Georgia. FAC ¶ 8. It provides a software-based service to companies that is designed to "improve the[] website design and customer experience" of the websites. Compl. ¶ 15. FullStory's customers embed FullStory's code on their own websites, which in turn allows those website operators to see certain information about how visitors to their websites are

interacting with and utilizing their sites.  FAC ¶¶ 38, 41.  Although incompletely and inaccurately described in the FAC, as alleged, this code allows the FullStory software, in some instances, to recognize, collect, and display certain events such as "keystrokes" and "mouse clicks."  *Id.* ¶ 41.  It also allows FullStory to simulate a user's website interactions through the software's "Session Replay."[2]  *Id.* ¶ 21.

Nike is one such customer that relies on FullStory for website analytics services. *Id*. ¶¶ 35–36.  As Plaintiff explains, Nike "voluntarily embedd[ed]" FullStory's code on its website "and pays FullStory to supply" the data that is needed to analyze how users interact with Nike's website, as shown in a session replay.  *Id.* ¶¶ 37–38.  The FAC correctly observes that FullStory is not a software company in the traditional sense of someone who sells copies of its software; rather, FullStory provides "Software-as-a-Service" or "SaaS."  *Id.* ¶ 9, 15.  Thus, instead of requiring its customers to purchase the software, install it on their own computers, and collect and host the website-interaction data on their own computers or servers, FullStory provides all of this for its customers, allowing its customers to interact with the data in the cloud, once the website operator has put FullStory's code on its website.

## B.   Allegations Related to Plaintiff

Plaintiff Burhaan Saleh is a California resident who alleges that in May 2020 he visited Nike's website and purchased a pair of shoes.  *Id*. ¶ 4.  As part of this visit, Plaintiff alleges that he submitted his payment card information to Nike through its website.  *Id.*  Plaintiff alleges that FullStory "recorded" this information for Nike in addition to Plaintiff's other key strokes and mouse clicks.  *Id.* ¶ 25.

---

[2] Plaintiff misleadingly cites to FullStory's own website for his allegation that the Session Replay feature "relies on real video of a user's interactions with a website . . . ."  FAC ¶ 19.  The website cited states exactly the opposite: that the "replay" is a "high-fidelity reproduction" of a user's interaction with the website, not an actual video.  *The Definitive Guide to Session Replay*, FullStory, https://www.fullstory.com/resources/the-definitive-guide-to-session-replay (last updated Oct. 2019).

Plaintiff does not allege that FullStory did anything with his "communications" other than make them available to Nike, the very entity to which Plaintiff was providing his information.  Plaintiff also does not allege that FullStory or Nike sold or otherwise disclosed his data to any third parties, or that he was affected in any way by the alleged conduct.

## III.    LEGAL STANDARD

Plaintiffs bear the burden of supporting the exercise of personal jurisdiction over each defendant individually.  *See Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1258 (9th Cir. 1989).  "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)).  "California's long-arm statute permits a court to exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Cal. Civ. Proc. Code § 410.10). "[T]he determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 108–09 (1987).

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A "threadbare" recitation of the elements of a cause of action does not suffice.  *Id.*  Neither do conclusory allegations or allegations that "merely track[] the language of the statute[s] [themselves], without providing facts to substantiate the claimed legal conclusions." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (courts should not accept as true

"allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

A challenge to a federal court's subject matter jurisdiction is properly raised under a motion to dismiss pursuant to Rule 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011). Standing requires that the plaintiff suffered an "injury in fact" that is "concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In seeking to invoke a court's jurisdiction, plaintiffs bear the burden of proving that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

## IV.   ARGUMENT

### A.   FullStory Should Be Dismissed for Lack of Personal Jurisdiction.

In order for a court to exercise personal jurisdiction over a defendant it must have either "general" or "specific" personal jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017). For corporate entities, "the place of incorporation and principal place of business are paradigm" examples of general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Additionally, general jurisdiction can exist as to a corporation outside of the forum where it is incorporated or headquartered if its contacts are "so continuous and systematic as to render it essentially at home" in a different forum. *Id.* at 139. Separately, for a finding that specific personal jurisdiction exists, "the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, 374 F.3d at 800 (citation omitted). Here, Plaintiff fails to allege facts sufficient for the Court to exercise either general or specific jurisdiction over FullStory.

### 1. Plaintiff Does Not and Cannot Establish General Jurisdiction Over FullStory.

In recent years, the Supreme Court has repeatedly emphasized the limited circumstances under which general jurisdiction applies. For example, in *Daimler AG v. Bauman,* the Supreme Court held that "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State'" will general jurisdiction exist. 571 U.S. at 122 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). The *Daimler* Court clarified that the "paradigm" forums for general jurisdiction are the corporation's (i) place of incorporation and (ii) principal place of business. *Id*. at 137. Three years after *Daimler*, the Court again emphasized the narrow circumstances under which general jurisdiction can attach: "BNSF, we repeat, is not incorporated [in Montana] and does not maintain its principal place of business [in Montana]. Nor is BNSF so heavily engaged in activity in Montana 'as to render [it] essentially at home' in that State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (citing *Daimler*, 571 U.S. at 137).

FullStory is neither incorporated in California nor does it have its principal place of business there. *See* FAC ¶ 8. There are no allegations that FullStory has "so heavily engaged in activity" in California so as to make FullStory "essentially at home" in California. *See BNSF*, 137 S. Ct. at 1559. The FAC thus fails to demonstrate FullStory is subject to general jurisdiction in California.

### 2. Plaintiff Does Not and Cannot Establish Specific Jurisdiction Over FullStory.

The Ninth Circuit examines three factors to determine when a state has a sufficient interest in a lawsuit to justify the exercise of specific jurisdiction over a nonresident corporate defendant: (1) the defendant must have purposefully availed itself "of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) the cause of action must "arise[] out of or relate[] to the

defendant's forum-related activities;" and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden on the first two prongs, and failure to establish either one requires dismissal for lack of personal jurisdiction. *Id*.

The Supreme Court has recently emphasized that to satisfy due process, the defendant's "challenged conduct" must "connect" it to the forum "in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). That is, "the defendant's *suit-related conduct* must create *a substantial connection* with the forum State." *Id.* at 284 (emphases added). Here, the FAC alleges that FullStory purposefully directed its activities towards California because it was "constructively" aware of *Nike's* customers in California due to the state's large economy. FAC ¶ 14. As explained below, this conclusory assertion fails to satisfy either of the first two prongs under *Schwarzenegger*.

a) <strong>The First Amended Complaint Contains No Allegations of Purposeful Direction by FullStory.</strong>

In tort actions, as here, the first prong of the *Schwarzenegger* test "focus[es] on whether a defendant purposefully directs [its] activities at the forum and on whether the effects of those activities are felt within the forum." *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, 2018 WL 10689420, at *6 (N.D. Cal. July 9, 2018). Such purposeful direction can be shown in two ways. First, if "the commission of an intentional tort" took place in the forum, that will satisfy the purposeful direction test. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 604 (9th Cir. 2018) (finding personal jurisdiction existed in Nevada because that was the forum in which defendant made the defamatory statements). Second, if the defendant's conduct "takes place outside the forum," there may still be purposeful direction if that conduct has "effects inside the forum state." *Id*.

As the FAC alleges, FullStory's business model involves "entering into voluntary partnerships with companies and providing their software to their partners." FAC ¶ 34. In this case, FullStory allegedly contracted with Nike, an Oregon corporation with its

1   principal place of business in Oregon.  *See id.* ¶ 5.  Plaintiff does not allege that Nike and

2   FullStory's licensing agreement was negotiated in California or entered into in California.

3   He does not allege that FullStory developed its software in California, or that FullStory

4   has any other suit-related contacts to this forum other than the fact that Plaintiff happened

5   to be in California when he visited *Nike's* website.  Under recent Supreme Court

6   precedent, this is not enough.

7          "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor

8   must be based on intentional conduct *by the defendant* that creates the necessary contacts

9   with the forum."  *Walden*, 571 U.S. at 286 (emphasis added).  The *plaintiff's* suit-related

10  contacts with the forum are not at issue.  Here, California is not the focal point of any of

11  FullStory's suit-related actions.  The most Plaintiff can claim is that FullStory entered

12  into a licensing agreement to provide software and services to an out-of-forum company

13  whose website was available to California residents.  Plaintiff attempts to argue that

14  FullStory purposefully directed its activities towards California because FullStory

15  "constructively" knew that some of *Nike's* customer base was located in California.  *See*

16  FAC ¶ 14.  But such minimal suit-related contacts do not establish that *FullStory*

17  purposefully directed its software at California.  *See Boschetto v. Hansing*, 539 F.3d

18  1011, 1018 (9th Cir. 2008) (plaintiff could not use eBay's national presence to establish

19  personal jurisdiction in the forum solely because the seller sold its goods on eBay).

20          **b)      There Are No Allegations that Plaintiff's Claims Arise Out
                      of or Relate to Forum-Related Activities by FullStory.**

21

22          Plaintiff also must demonstrate that his claims arise out of or relate to *FullStory's*

23  contacts *with California.  See Schwarzenegger*, 374 F.3d at 802.  There must be "an

24  adequate link" between the defendant's contacts with the forum and the claims at issue.

25  *Bristol-Myers*, 137 S. Ct. at 1781.  Contacts unrelated to Plaintiff's alleged claims will

26  not suffice for specific jurisdiction.  *Id*. ("[E]ven regularly occurring sales of a product in

27  a State do not justify the exercise of jurisdiction over a claim *unrelated* to those sales.")

28  (emphasis added).

Again, the FAC contains only perfunctory allegations of forum-related contacts by FullStory, and does not allege specific contacts giving rise to any of Plaintiff's claims in this action. "What is needed—and what is missing here—is a connection between the forum and the *specific claims at issue*." *Id.* (citing *Walden*, 571 U.S. at 288–89) (emphasis added). Plaintiff's alleged harm from accessing Nike's website while in California does not establish forum-related contacts *as to FullStory*. Just as in *Walden*, Plaintiff would have experienced the same alleged harm by visiting Nike's website and interacting with FullStory's software regardless of the state he was in at the time he visited the website. *See Walden*, 517 U.S. at 290. Given the absence of any allegations demonstrating FullStory's forum-related conduct tied to this suit, the Court should dismiss FullStory for lack of personal jurisdiction.

### c) The Exercise of Jurisdiction Over FullStory in California Is Not Reasonable.

The final prong of the *Schwarzenegger* test requires that "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. Here, FullStory, a Georgia-based company, contracted with Nike, based in Oregon. It would be unreasonable to require FullStory to come to California to defend itself when FullStory never took any suit-related actions to avail itself of California and its laws. The fact that FullStory may have been "constructively" aware of Nike's customers in California does not change this analysis. Indeed, a finding of personal jurisdiction over FullStory here would subject FullStory to personal jurisdiction in every forum reached by any one of its customers' websites—effectively every forum in the country. To allow FullStory to be hauled into court in every forum in the country where its customers' customers might be located would be unreasonable.

**B.      Every Claim in the First Amended Complaint Fails as a Matter of Law.**

Even if the Court finds personal jurisdiction over FullStory, the Court should still dismiss each claim in the FAC, for each fails as a matter of law.

**1.      The Court Should Dismiss Count 1 Because the First Amended Complaint Fails To State a Claim Under Section 631.**

Section 631 of CIPA establishes liability, in relevant part, for:

> [a]ny person . . . [1] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state, or [2] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [3] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . ."

Cal. Pen. Code § 631(a).  Put succinctly, the section proscribes third party access to ongoing communications or the aiding of third-party access to ongoing communication. For several reasons, Plaintiff's allegations fail the requirements of Section 631.

**a)      FullStory and Nike Did Not Violate Section 631 Because Nike, Using FullStory's Technology, Was a Party to Plaintiff's Purported Communications.**

Plaintiff has not alleged an essential element of a Section 631 claim: the existence of *third parties* intruding upon a conversation.  It cannot be "a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("'Eavesdropping' is the problem the Legislature meant to deal with; 'eavesdrop' is defined in Webster's 7th New Collegiate Dictionary (1972) as 'to listen secretly to what is said in private.'").  Thus, the statute does not create liability for someone "who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d

589, 607 (9th Cir. 2020) ("*Facebook III*") (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.").

It is indisputable that Nike was a party to the communication. Plaintiff alleges that he went to Nike's website and provided information *to Nike* in order to purchase a pair of shoes. FAC ¶ 4. To the extent that this purchase involved a communication, the party with whom plaintiff was communicating was Nike. Accordingly, Plaintiff cannot sustain a direct claim against Nike under Section 631.

Nor has Plaintiff stated a claim against FullStory under Section 631 or as to Nike based on the aiding and abetting provisions of Section 631. *See* Cal. Pen. Code § 631. For the reasons explained below, just as Nike was a party to the communication, so too was FullStory, as Nike's vendor, which was deployed by Nike to collect information regarding user interaction with the website and provide that information to Nike for Nike's own benefit. Thus, Nike did not "aid, agree with, employ, or conspire with" FullStory to violate Section 631 because FullStory's actions did not violate the statute either.

While evaluating the party exception may be more straightforward in the context of telephonic communications—since CIPA was specifically drafted with those types of communications in mind—the same principles can be applied here, where Nike used FullStory's SaaS. In *Rogers* for example, the court held that the defendant, a "public information officer" for San Jose, could not be liable for tape recording and disclosing a conversation he had with a candidate for city council where that candidate called the defendant and the defendant never alerted the candidate to his recording of the call. 52 Cal. App. 3d at 898 (Section 631 does not prohibit "the recording of a conversation made by a participant rather than by a third party."). Similarly, in *Membrila v. Receivables Performance Management, LLC*, the court held that the defendant debt collector could not be liable for recording and monitoring various telephone conversations it had with the

1    plaintiff because it was a party to those conversations.  2010 WL 1407274, at *2 (S.D.

2    Cal. Apr. 6, 2010).  In the context of the internet, where evaluating the party exception

3    may be less straightforward, the Ninth Circuit instructs courts to examine the "technical

4    context" presented by the communications at issue to determine who the parties to those

5    communications are.  *See Facebook III*, 956 F.3d at 607–08.

6         Here, based on Plaintiff's own allegations, FullStory cannot be considered a third

7    party to Plaintiff's alleged communications with Nike.  Plaintiff alleges that Nike

8    voluntarily and intentionally embedded FullStory's software code on Nike's website,

9    FAC ¶ 38, and that Plaintiff's data was transmitted to FullStory's servers so that

10   FullStory could "make[] the information available to [Nike]."  *Id*. ¶ 27.  In other words,

11   FullStory provides a service to Nike for the sole purpose of providing analytics to Nike.

12   Notably, Plaintiff nowhere alleges that FullStory used Plaintiff's data for any purpose

13   other than to provide it to Nike or was acting in any capacity other than as Nike's service

14   provider.  Plaintiff does not, for example, allege that FullStory sold his data, used it for

15   advertising purposes, or disclosed it to any third party.  Indeed, Plaintiff alleges precisely

16   the opposite.  He alleges that FullStory offers software-as-a-service; that is, Nike is

17   effectively renting space on FullStory's servers where Nike can store data related to

18   website interactions and view that data using FullStory's dashboard.  *See FAC* ¶ 9.

19        These actions do not amount to surreptitious wiretapping by a *third party*.

20   FullStory's involvement in facilitating the collection of data regarding Plaintiff's

21   interactions with Nike's website is simply the modern-day SaaS equivalent of the city

22   information officer in *Rogers* having the phone company install a "tape recorder jack" on

23   his phone so that he could, for example, record conversations and "relay parts of [those]

24   conversations . . . to local radio stations for broadcast."  *Rogers*, 52 Cal. App. 3d at 897

25   (upholding dismissal of Section 631 claim where defendant was a party to the

26   conversation he recorded).  This is no different than if the defendant in *Rogers* had used

27   SaaS to record, store, listen to, and analyze his conversations with the plaintiff there.

28

Indeed, unlike the defendant in *Rogers* who provided recorded conversations to radio stations for public broadcast, Plaintiff here does not allege that FullStory or Nike divulged any of his information to third parties.

The Ninth Circuit's recent decision addressing the party exception demonstrates how FullStory's service is far afield from the actions of defendants that courts have found to be third parties to a communication.  In *Facebook III*, the Ninth Circuit held that Facebook could not avail itself of the party exception where Facebook allegedly used "plug-ins to track users' browsing histories when they visit[ed] third-party websites, and then compil[ed] these browsing histories into personal profiles which [were] sold to advertisers to generate revenue."  956 F.3d. at 596.  Facebook's plug-ins performed these actions even if the visitor to those third-party websites was not separately signed into Facebook, and there were no allegations that the third-party website owners had access to or used the data collected by Facebook through those plug-ins for their own purposes.  *Id.*

Looking at the alleged "technical context," as *Facebook III* requires, Plaintiff does not allege that FullStory did anything with the data allegedly collected from his interaction with Nike's website other than make it available to Nike to review, nor does he allege that FullStory otherwise operated like a third party in any respect.  The sole function of FullStory's code is to sit in Nike's own code on the website and allow Nike to see how users interact with its own website.  In other words, Nike uses FullStory's software the same way the defendants in *Rogers* and *Membrila* used recorders—behavior the courts there made clear was not prohibited under the statute.  *Rogers*, 52 Cal. App. 3d at 899; *Membrila*, 2010 WL 1407274, at *2.

Indeed, to hold that FullStory violates Section 631 in these circumstances would criminalize the ubiquitous use of cloud software that is required to ensure that websites,

and indeed the internet in general, function.[3]  Plaintiff's theory would mean that *any* website that uses another party's software to power and enhance its functionality would be engaging in criminal eavesdropping—even where the software serves only to analyze information on the website and does not provide that information to anyone else for any other purposes (such as targeted advertising).  Because FullStory and Nike were parties to Plaintiff's communications, they cannot be held liable under Section 631 and neither can Nike be held liable for aiding or conspiring with FullStory to violate Section 631 as FullStory did not commit an underlying violation.  Count 1 should be dismissed.

      **b)**      **FullStory and Nike Did Not Violate Section 631 Because the Software Did Not Collect the "Contents" of Plaintiff's Purported Communications.**

Plaintiff's Section 631 claim also fails because Section 631 prohibits only the "unauthorized access of the '*contents*' of any communication."  *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (emphasis added) (quoting Cal. Pen. Code § 631(a)).  The analysis of whether something is the "contents" of a communication under CIPA is the same as it is under the federal Wiretap Act.  *Id*. (citation omitted).  Thus, "contents" means "the intended message conveyed by the communication . . . ."  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).  "Contents" does not include "information regarding the characteristics of the message that is generated in the course of the communication" such as "the name, address, and subscriber number or identity of a subscriber or customer."  *Id*. (quotation marks omitted); *see also United*

---

[3] Take the website of the Northern District of California, for example, at http://www.cand.uscourts.gov/ (last visited December 14, 2020).  That site utilizes a search function "Enhanced by Google" to allow visitors to search its website.  That search box, immediately starts populating suggested searches the moment a user starts typing information.  For example, if a user types in "AL" Google automatically populates the search field with the suggested search "Judge William Alsup."  Plaintiff's theory of liability would mean that both that Court and Google are violating Section 631, as a user of the search function would be sharing its inquiry with Google.

*States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (holding "origination, length, and time" of telephone call was not "contents").

Here, Plaintiff bases his Section 631 claim at least in part on FullStory's purported capturing of data that are not the "contents" of his communications. He alleges that, in addition to his mouse strokes, FullStory "captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, his location at the time of the visit, his browser type, and the operating system on his device." FAC ¶¶ 41, 44. None of this information is "the intended message conveyed by the communication" but is instead "information regarding the characteristics of the message." *In re Zynga*, 750 F.3d at 1106. Just as in *Zynga*, this failure to allege the interception of the "contents" of Plaintiff's communications requires dismissal of his claim as to any information that was not the "contents" of his communications. *See id.* at 1100 (upholding the district court's dismissal of the claims against the defendants for the plaintiffs' failure to allege "contents" of communications had been disclosed).

Plaintiff's additional allegation that Defendants captured his "payment card information" fares no better as it is based on nothing more than speculation and contradicted by the very "study" he cites in an attempt to support it. *See* FAC ¶¶ 2, 4, 33. Plaintiff relies on a 2017 blog post that he refers to as a "Princeton study" to support his claim that FullStory collects sensitive information from website users. *Id.* ¶ 33. Yet that very same blog post acknowledges that FullStory has an automated redaction feature that excludes certain information; *such as credit card information*, from collection. *See* Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts*, FREEDOM TO TINKER (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/ no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts. Although the study found that the implementation of FullStory on *some* websites was imperfect, Plaintiff offers no allegations to suggest that Nike.com was one such website. *See id.* Plaintiff makes no allegations to support the idea that FullStory's automated exclusion

capabilities failed on Nike's website and collected his payment card information.  And if Plaintiff's payment card information was not collected, then Plaintiff has not alleged that any "contents" of his communications were collected at all other than his vague allegation of "other electronic communications."

Accordingly, the Court should dismiss Count 1 to the extent Plaintiff attempts to base his claim on the purported collection of information that was not the "contents" of his communications or his speculative assertion that Defendants captured his credit card information.  Here, too, to the extent Plaintiff's theory of liability as to Nike extends to the aiding of FullStory to violate Section 631, that liability cannot exist where FullStory did not itself violate Section 631.

**c)**   **The Conduct Alleged Did Not Violate Section 631 Because It Was Disclosed in Nike's Privacy Policy, Relied on by the First Amended Complaint.**

Plaintiff's Section 631 claim also fails because Nike disclosed the alleged interception to Plaintiff.  The gravamen of a Section 631 claim is that a third party *surreptitiously* intruded upon a conversation.  "'Eavesdropping' is the problem the Legislature meant to deal with" in enacting Section 631.  *Rogers*, 52 Cal. App. 3d at 899.  To "'[e]avesdrop' is 'to listen secretly to what is said in private.'"  *Id*. (quoting Webster's 7th New Collegiate Dictionary (1972)).  But there is nothing surreptitious or hidden about FullStory's service or data collection, as alleged.  The privacy policy for Nike's website explicitly disclosed to users like Plaintiff that data regarding their interactions with the website could be collected by Nike *and by Nike's service providers*.  Indeed, it is the reality of modern websites that they rely on service providers for their operation, and that a user's interactions with a website will be collected and shared with the website operator and its service providers.

Here, Nike's privacy policy discloses that Nike engages in the exact actions alleged in the FAC.[4]  Nowhere does the FAC allege facts to support any inference that the alleged data collection was surreptitious.  Nor could Plaintiff allege such facts, because Nike's policy explicitly states that Nike and third parties may collect information from users of Nike's website, and that such information may be shared with third parties like FullStory.  *See Nike Privacy Policy*, Nike, https://agreementservice.svs.nike.com/ rest/agreement?agreementType=privacyPolicy&uxId=com.nike.commerce.nikedotcom.w eb&country=US&language=en&requestType=redirect (last modified Oct. 12, 2020).  For example, the policy provides that "We use data about how our visitors use our Platform to understand customer behavior or preferences."  *Id.*  The policy specifically notes that users' information may be collected using "a variety of methods, such as cookies and pixel tags."  *See id.*  And user information such as "click behavior" may be collected. The policy also discloses that Nike may share personal data with service providers "for business purposes on Nike's behalf, for example to process credit cards and payments, . . . research and analysis, . . . [and] analytics."  *Id.*  In addition, the policy discloses that Nike's "technology partners," acting "as service providers on Nike's behalf," may collect data from visitors to Nike's website.  *Id.*

Plaintiff's conclusory allegations that FullStory "secretly observe[d] and record[ed] website visitors' keystrokes, mouse clicks, and other electronic communications," FAC ¶ 1, simply cannot be reconciled with Nike's publicly available privacy policy which states that "[w]hen interacting with [Nike's website], certain data is automatically collected from [a user's] device or web browser" including "information

---

[4] Courts in the Ninth Circuit routinely consider website privacy policies at the motion to dismiss stage where, as here, a plaintiff's claim depends on the language of the privacy policy and it is referenced in the complaint.  *See, e.g.*, *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015).  Here, the FAC acknowledges the presence of Nike's privacy policy and contains allegations that Nike's privacy policy "does not mention FullStory or its Session Replay feature. . . ."  FAC ¶ 48.

about [the individual's] interaction" with the website, such as "click behavior" and "purchases." *Id. Nike Privacy Policy*. This is precisely the data on which Plaintiff bases his claim. FAC ¶ 4 (alleging that "mouse clicks" and "payment card information" were wiretapped). Given that Nike fully discloses that it, and its service providers like FullStory, engage in the behavior at issue, there is nothing surreptitious about their actions and it cannot amount to wiretapping under Section 631.

### 2. The Court Should Dismiss Count 2 Because Plaintiff Lacks Standing To Assert Such a Claim and Because the FAC Fails To State a Claim Under Section 635.

Parroting the statute's language, Plaintiff asserts that Nike and FullStory violated California Penal Code Section 635 because "each Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another." FAC ¶ 76 (quoting Cal. Pen. Code § 635). This is wrong as a matter of law for several independent reasons.

### a) Plaintiff Lacks a Private Right of Action and Standing To Assert a Claim Under Section 635.

Plaintiff also lacks both statutory and constitutional standing to bring a Section 635 claim. He lacks a private right of action under Section 635 because, under CIPA, only those who have "been injured by a violation of this chapter may bring an action against the person who committed *the violation*." Cal. Pen. Code § 637.2(a) (emphasis added). But the mere manufacture, possession, or sale of an eavesdropping "device" by a defendant (as alleged here under Section 635) causes no injury to a person such as Plaintiff. Indeed, in a case involving the analogous federal statute, 18 U.S.C. § 2512, the court held it would be "constitutionally problematic" to afford a private right of action against defendants who merely possessed a wiretapping device because "plaintiffs who suffered no injury in fact would still be able to sue." *Cohen v. Casper Sleep, Inc.*, 2018 WL 3392877 at *5 (S.D.N.Y. July 12, 2018); *see In re Lenovo Adware Litig.*, 2016 WL

6277245 at *7 (N.D. Cal. Oct. 27, 2016) (Section 2512 does not establish private right of action). Plaintiff does not allege that he was injured in any way by the supposed violation of Section 635. *See* FAC ¶¶ 73–80. Failing to offer an allegation of actual injury, Plaintiff has no private right of action under Section 635.

For a parallel reason, Plaintiff lacks Article III standing to assert a claim under Section 635. A plaintiff must have "suffered an injury in fact" to have standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). That is, he "must show that he . . . suffered an invasion of a legally protected interest that is concrete and particularized" from the alleged violation. *Id*. at 1548 (citation omitted). Defendants actions must have "affect[ed] the plaintiff in a personal and individual way." *Id*. And a plaintiff demonstrates standing for a violation of one section of a statute does not meet automatically the standing requirement for a violation of another section of that same statute. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733–34 (2008). Here, as noted, Plaintiff makes no allegation of injury from the alleged violation of Section 635.[5] Claiming only that Defendants manufactured, sold, or possessed a "device" does not establish any harm to Plaintiff different from any member of the public, so the requisite "injury in fact" required for standing under Article III is absent. *See Spokeo*, 136 S.Ct. at 1547.

### b)   FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping.

Section 635 only applies to a "device" that is "primarily or exclusively" designed for eavesdropping. As an initial matter, there is no reason to think that FullStory's code, which Nike is alleged to have embedded on its website, qualifies as a "device" under the statute. Plaintiff refers to it as a "snippet of code." FAC ¶ 25. But courts in this Circuit

---

[5] Plaintiff's allegations in support of his Section 631 claim explicitly contend that "[t]he violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing." FAC ¶ 70. In notable contrast, Plaintiff's Section 635 claim contains no such allegation as to any purported Article III injury.

have rejected the argument that a "cookie" was a device where plaintiff had defined cookie "as a small text file containing a limited amount of information which sits idly on a user's computer until contacted by a server." *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) ("*Facebook I*").  There, in addressing a different section of CIPA, the plaintiff alleged that a cookie was a "device" and thus qualified as a "machine, instrument, or contrivance" used to intercept communications. *Id*.  The court rejected plaintiffs' threadbare definition, holding that the plaintiffs must actually "include facts in their pleading to show why" the cookie was a "device" that could qualify as a "machine, instrument, or contrivance." *Id*.[6]  The FAC contains no such facts.

Even if FullStory's code can be considered a "device," the FAC's factual allegations do not support a plausible inference that the code is "primarily or exclusively designed or intended for eavesdropping," as required by Section 635.  And the fact Plaintiff has not established that the alleged data collection at issue here amounts to a violation of Section 631, for the multiple independent reasons set out above, also requires dismissal of Plaintiff's Section 635 claim.  FullStory's software code cannot be primarily

---

[6] Dictionary definitions support a narrow interpretation of "device" here.  For example, Merriam-Webster defines "device" as "something devised or contrived: such as . . . a piece of equipment or a mechanism designed to serve a special purpose or perform a special function (smartphones and other electronic devices, a hidden recording device)." *Device*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/device (last visited Nov. 13, 2020).  And the Oxford English Dictionary defines "device" as "an invention, contrivance; esp. a mechanical contrivance (usually of a simple character) for some particular purpose." *Device*, Oxford English Dictionary, https://www.oed.com/view/Entry/51464 (last visited Nov. 13, 2020).  In addition, given that CIPA is a penal statute, any ambiguity in the meaning of the word "device" should be interpreted narrowly under the rule of lenity. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (applying rule of lenity to civil application of penal statute).

or exclusively designed for eavesdropping if Plaintiff has failed to establish that eavesdropping occurred here.

In addition, rather than support the conclusory allegation that FullStory's code is "primarily or exclusively designed or intended for eavesdropping," the FAC's factual allegations demonstrate the contrary: that FullStory's software is designed and intended to help companies improve their websites. Plaintiff alleges that FullStory's software provides "marketing analytics." FAC ¶ 15. And the original Complaint notes that the purpose of FullStory's software is to "help businesses improve their website design and customer experience"—not to eavesdrop. Compl. ¶ 15. Indeed, FullStory's software code and the service based on that software is best understood as "part of [the] routine internet functionality" that makes digital commerce possible. *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) ("*Facebook II*") ("[W]ebsites routinely embed content from third-party servers in the form of videos, images, and other media, as well as through their use of analytics tools, advertising networks, code libraries and other utilities."). Digital retailers—and indeed websites of all kinds—use analytics software like FullStory's for a host of legitimate reasons that do not amount to eavesdropping. Permitting Plaintiff's claims to proceed would subvert the network architecture on which the internet is built and could potentially render countless website operators liable as eavesdroppers.

### c)   Even if FullStory's Code Was a Covered Device, Nike's Conduct Is Not Prohibited by Section 635.

Even if FullStory's code can be considered a device under the statute, Nike did not engage in any of the actions prohibited by the statute. Section 635 imposes liability on anyone who "manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another" a device "primarily or exclusively designed or intended for eavesdropping." Cal. Pen. Code § 635. The only term in that list that could plausibly apply to Nike is "possess." Under the statutory interpretation doctrine of *ejusdem generis*, however, when a "more general term follows more specific

terms in a list, the general term is usually understood to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018). Thus, the general term "possess" in Section 635 should be read in context of the more specific terms around it to be limited to the actual manufacturing chain and distribution and sales channels. *See id.* If the legislature intended to extend liability to the end user of such a "device" it could have easily included more definitive terms like "purchased" or "used." It did not. Thus, "possesses" should be read to include only those entities or individuals involved in the manufacture, distribution, or sale of a prohibited device, which does not include Nike here.

Because Plaintiff has failed to plausibly allege that FullStory's software code is either a "device" or is "primarily or exclusively designed for eavesdropping," and because Nike could not have plausibly engaged in any act prohibited by the statute, the Court should dismiss Count 2.

### 3. The Court Should Dismiss Count 3 Because Plaintiff Cannot State a Claim for Invasion of Privacy Under the California Constitution.

Plaintiff's claim for violations of his constitutional right to privacy fails as a matter of law. An invasion of privacy claim under the California Constitution requires plaintiff to show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion constitutes a "serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012). In determining whether a reasonable expectation of privacy exists, courts consider the "customs, practices, and physical settings" surrounding a particular defendant's activities. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994).

Here, Defendants' alleged actions demonstrate that Plaintiff cannot plausibly allege a reasonable expectation of privacy in the information he provided to Nike and FullStory because Plaintiff himself *intentionally* provided it to the Defendants. That Plaintiff alleges he was unaware of FullStory's specific role in the website's functionality

does not alter this analysis.  The use of third-party vendors, programs, software, and third-party cloud storage for a variety of purposes is commonplace on the internet. Reasonable internet users recognize that when they input information on a website, the businesses running those websites "routinely embed content from third-party servers . . . through their use of analytics tools, advertising networks, code libraries and other utilities." *Facebook II*, 263 F. Supp. 3d at 846.  Where, as here, data is allegedly provided by the consumer voluntarily to the retailer and collected for the purpose of running the website, Plaintiff cannot plausibly allege a reasonable expectation of privacy in the information he provided.

Even if Plaintiff could plausibly allege a reasonable expectation of privacy, the facts he alleges do not permit a reasonable inference that the alleged breach of that privacy constitutes an "egregious breach of social norms."  Invasions of privacy must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. Courts typically find this standard is satisfied only in egregious circumstances, such as dissemination by the police of gruesome photographs of a deceased car accident victim, disclosure of a patient's HIV status, or improper use of confidential mental health records.  *See, e.g.*, *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010); *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991); *Taus v. Loftus*, 40 Cal. 4th 683 (2007).

Here, Plaintiff alleges, at most, that FullStory captured his "mouse clicks" and "keystrokes" and speculates that this amounted to Defendants' collection of his "payment card information."  FAC ¶ 2.  As explained above, the blog post Plaintiff cites to support this speculation says precisely the opposite: that the software is designed *not* to collect such information.  *See* Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts*, FREEDOM TO TINKER (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-

scripts.  Even accepting his speculation as true, this is the very same information that Plaintiff was purposefully providing to Nike in order to make his purchase, and Plaintiff nowhere alleges that FullStory's software was doing anything beyond displaying this exact same information to Nike.  Courts in this Circuit have found that "[e]ven *disclosure* of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms.'"  *Low*, 900 F. Supp. 2d at 1025 (emphasis added); *see In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (finding alleged commingling and disclosure of personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences is not highly offensive); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (disclosing for marketing purposes was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1050, 1063 (N.D. Cal. 2012) (Apple's *disclosure* of the plaintiffs' addresses, gender, age, and current location to third-party apps did not "constitute an egregious breach of social norms.").  If disclosure of such personal information is not an egregious breach of social norms, it cannot be that a business egregiously breaches social norms when it receives the information its own customer provided to it or analyzes how that customer interacts with its own website—all of which occurs regularly on the internet.

For all these reasons, Plaintiff's Count 3 fails as a matter of law and should be dismissed with prejudice.

## V.    CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's First Amended Complaint with prejudice.

DATED:  January 22, 2021         COVINGTON & BURLING LLP

By:  */s/ Emily Johnson Henn*

EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

*Attorneys for Defendants*
*Nike, Inc. and FullStory, Inc.*