1
2
3
4
5
6
7

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         jsmtih@bursor.com

*Attorneys for Plaintiff*

8
9
10
11

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18

| | |
|---|---|
| BURHAAN SALEH, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>    v.<br><br>NIKE, INC. and FULLSTORY, INC.,<br><br>                           Defendant. | Case No. 2:20-cv-09581-FLA-RAO<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date:    March 5, 2021<br>Time:   1:30 p.m.<br>Courtroom: 6B<br>Judge: Hon. Fernando L. Aenlle-Rocha |

19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.   The Court Has Specific Personal Jurisdiction Over
     Fullstory ................................................................................................... 2

     A.   The Purposeful Direction Requirement Is Satisfied .................... 3

          1.   Wiretapping and Internet-Tort Cases Support
               The Purposeful Direction Requirement Here ..................... 3

          2.   FullStory's Authorities Do Not Support
               Dismissal ............................................................................ 5

     B.   The Claims Arise Out of Forum-Related Activities .................... 7

     C.   The Exercise of Jurisdiction Is Reasonable ................................ 7

II.  Plaintiff Sufficiently Alleges A Claim Under § 631(a) ......................... 9

     A.   Defendants' Arguments That They Were Parties To
          The Communication Do Not Support Dismissal ......................... 9

          1.   Nike Is Liable For Enabling FullStory's
               Wiretapping ........................................................................ 9

          2.   FullStory Was Not A Party To The
               Communications ................................................................ 11

     B.   Plaintiff's Website Interactions Are
          "Communications" Under *Moosejaw, In re
          Facebook,* and *In re Zynga* .......................................................... 12

     C.   Nike's Privacy Policy Does Not Support Dismissal .................. 15

          1.   Plaintiff Was Wiretapped Before There Was
               An Option To Agree To Any Privacy Policy .................... 15

          2.   The Privacy Policy Arguments Fail Under
               *Nguyen* .............................................................................. 16

          3.   Defendants Cite The Wrong Privacy Policy .................... 17

          4.   The Privacy Policy Does Not Disclose The
               Wiretapping ...................................................................... 17

III.   Plaintiff Sufficiently Alleges A Claim Under § 635.............................. 19

    A.   Plaintiff Has Both A Private Right Of Action And
         Standing To Assert A Claim Under § 635................................. 19

    B.   Fullstory's Code Is A "Device" That Is "Primarily
         Or Exclusively" Designed For Eavesdropping........................... 21

    C.   Nike's Possession Of Fullstory's Code Violates
         § 635 ...................................................................................... 22

IV.   Plaintiff States A Claim For Invasion Of Privacy ................................ 23

CONCLUSION................................................................................................ 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ades v. Omni Hotels Mgmt. Corp.*,
   46 F. Supp. 3d 999 (C.D. Cal. 2014).........................................................................23

*Bergstein v. Parmar*,
   2014 WL 12586073 (C.D. Cal. June 23, 2014) ...............................................passim

*Berman v. Freedom Financial Network, LLC*,
   2020 WL 5210912 (N.D. Cal. Sept. 1, 2020) ..........................................................17

*Bonnichsen v. United States*,
   367 F.3d 864 (9th Cir. 2004)......................................................................................9

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008).....................................................................................6

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................................12, 18

*Colgate v. JUUL Labs, Inc.*,
   402 F. Supp. 3d 728 (N.D. Cal. 2019) ....................................................................16

*Cothron v. White Castle System, Inc.*,
   2020 WL 3250706 (N.D. Ill. June 16, 2020) ...........................................................16

*CrossFit, Inc. v. Fitness Trade sp. z o.o.*,
   2020 WL 6449155 (S.D. Cal. Nov. 2, 2020) .........................................................4, 5

*Francis v. Api Tech. Servs., LLC*,
   2014 WL 11462447 (E.D. Tex. Apr. 29, 2014).......................................................7, 8

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
   905 F.3d 597 (9th Cir. 2018)......................................................................................6

*Gadda v. State Bar of Cal.*,
   511 F.3d 933 (9th Cir. 2007)..................................................................................8, 17

*Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*,
   458 F. Supp. 3d 1202 (N.D. Cal. 2020) ....................................................................4

*Harris v. Harris*,
 935 F.3d 670 (9th Cir. 2019) ................................................................. 9

*In re Carrier IQ, Inc.*,
 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................ 22

*In re Facebook Internet Tracking Litig.*,
 263 F. Supp. 3d 836 (N.D. Cal. 2017) ................................................ 21

*In re Facebook, Inc. Internet Tracking Litig.*,
 956 F.3d 589 (9th Cir. 2020) ........................................................ passim

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
 806 F.3d 125 (3d Cir. 2015) ................................................................ 24

*In re Google Inc.*,
 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ............................... 16, 19

*In re Lenovo Adware Litig.*,
 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ...................................... 9

*In re Pharmatrak, Inc.*,
 329 F.3d 9 (1st Cir. 2003) ................................................................... 13

*In re Vizio, Inc., Consumer Privacy Litig.*,
 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .............................................. 24

*In re Zynga Privacy Litig.*,
 750 F.3d 1098 (9th Cir. 2014) ........................................... 1, 13, 14, 15

*Ion Equip. Corp. v. Nelson*,
 110 Cal. App. 3d 868 (1980) .............................................................. 20

*j2 Cloud Servs., Inc. v. Fax87*,
 2017 WL 1535083 (C.D. Cal. Apr. 27, 2017) .................................. 3, 4

*Kauders v. Uber Techs., Inc.*,
 2019 WL 510568 (Mass. Super. Ct. Jan. 3, 2019) ............................. 16

*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*,
 133 Cal. App. 4th 26 (2005) .............................................................. 23

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018) ................................................. 15, 16, 18

*Koala v. Khosla*,
   931 F.3d 887 (9th Cir. 2019) ................................................................... 15

*Loomis v. Slendertone Distribution, Inc.*,
   420 F. Supp. 3d 1046 (S.D. Cal. 2019) ..................................................... 4

*Luis v. Zang*,
   833 F.3d 619 (6th Cir. 2016) ................................................................... 21

*Maghen v. Quicken Loans, Inc.*,
   2014 WL 12586447 (C.D. Cal. Oct. 28, 2014) ....................................... 23

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ......................................................... passim

*Membrila v. Receivables Performance Mgmt.*,
   2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ........................................... 12

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007) ................................................................... 8

*Moreno v. San Francisco Bay Area Rapid Trans. Dist.*,
   2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ....................................... 16

*Myers v. Bennett Law Offices*,
   238 F.3d 1068 (9th Cir. 2001) ................................................................... 7

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ................................................................. 16

*Oakley, Inc. v. Donofrio*,
   2013 WL 12126017 (C.D. Cal. June 14, 2013) ........................................ 4

*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016) ...................................... 17, 18, 24

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ................................................................... 8

*People v. Snyder*,
   22 Cal. 4th 304 (2000) ............................................................................... 9

*Rainsy v. Facebook, Inc.*,
   311 F. Supp. 3d 1101 (N.D. Cal. 2018) ................................................. 13

*Revitch v. New Moosejaw, LLC,*
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)..................................................passim

*Ribas v. Clark,*
  38 Cal. 3d 355 (1985)........................................................................................ 10

*Rogers v. Ulrich,*
  52 Cal. App. 3d 894 (1975)......................................................................... 10, 12

*Romero v. Securus Techs., Inc.,*
  216 F. Supp. 3d 1078 (S.D. Cal. 2016) ............................................................20

*Roney v. Miller,*
  705 F. App'x 670 (9th Cir. 2017) ....................................................................25

*S.D. v. Hytto Ltd.,*
  2019 WL 8333519 (N.D. Cal. May 15, 2019) ...........................................passim

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004)......................................................................2, 6, 7

*Sennheiser Elec. Corp. v. Chutkowski,*
  2012 WL 13012471 (C.D. Cal. Apr. 20, 2012) ..................................................6

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ................................................................................20, 21

*Stomp, Inc. v. NeatO, LLC,*
  61 F. Supp. 2d 1074 (C.D. Cal. 1999)...........................................................4, 5

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.,*
  2018 WL 106894420 (N.D. Cal. July 9, 2018)..................................................6

*United States v. Forrester,*
  512 F.3d 500 (9th Cir. 2008).............................................................................13

*United States v. Monday,*
  614 F.3d 983 (9th Cir. 2010).............................................................................23

*United States v. Walker River Irrigation Dist.,*
  890 F.3d 1161 (9th Cir. 2018)...........................................................................23

*Valentine v. Nebaud, Inc.,*
  2009 WL 8186130 (N.D. Cal. Oct. 6, 2009)......................................................3

*Walden v. Fiore,*
    571 U.S. 277 (2014) ............................................................................ 5

*Warden v. Kahn,*
    99 Cal. App. 3d 805 (1979) .............................................................. 10

*WeWork Cos. Inc. v. WePlus (Shanghai) Tech. Co., Ltd.,*
    2020 WL 83845 (N.D. Cal. Jan. 7, 2020) ......................................... 5

*Ziegler v. Indian River County,*
    64 F.3d 470 (9th Cir. 1995) ............................................................ 7, 8

**STATUTES**

18 U.S.C. § 2512(b) ............................................................................. 21

47 U.S.C. § 605 .................................................................................... 23

47 U.S.C. § 605(e)(4) ........................................................................... 23

Cal. Penal Code § 631 ................................................................. passim

Cal. Penal Code § 635 .................................................. 20, 21, 22, 23

Cal. Penal Code § 637.2(b) ................................................................ 20

**RULES**

Fed. R. Civ. P. 9(b) .............................................................................. 3

## **INTRODUCTION**

Nike hired FullStory to secretly make recordings of everything anyone does on its website, nike.com, using a tool called "Session Replay."  With this tool, Defendants "watch and record a visitor's every move on a website, in real time" with FullStory's software providing "pixel-perfect playback."  *Id.* at ¶ 17, 18-19, 24. Defendants also can monitor website visitors *live* where (in FullStory's own words) "you'll essentially be riding along in near real time."  *Id.* at ¶ 28.  This technology is not normal, not safe, and "far exceeds user expectations."  FAC, ¶¶ 26, 33, 49.   It also violates California's privacy and wiretap laws.  Defendants' motion to dismiss should be denied in its entirety.

First, FullStory—but not Nike—argues this Court lacks specific personal jurisdiction over it.[1]  The notion that the Court lacks personal jurisdiction over someone who wiretaps Californians across state lines defies common sense.  There are many decisions supporting personal jurisdiction both in the context of wiretapping, and in the context of torts committed over the Internet.  FullStory does not cite any case granting a 12(b)(2) motion under facts like those at issue here.

Second, most of Defendants' arguments concerning the wiretapping claim under CIPA § 631(a) are rebutted by *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, *1 (N.D. Cal. Oct. 23, 2019), which involved very similar facts, and two Ninth Circuit decisions addressing the monitoring of internet activity: *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), and *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014).  Nor can Defendants legitimately argue that users consented to this conduct when the wiretap is deployed as soon as someone visits nike.com, before they would ever have a chance to see the Privacy Policy.  In any event, the Privacy Policy is too inconspicuous to furnish a defense, and it does not disclose FullStory's recording.

---

[1] Plaintiff does not contend general jurisdiction applies here.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Third, Defendants argue Plaintiff lacks standing to sue under CIPA § 635, and that they cannot be liable in any event because the technology is not "primarily or exclusively designed or intended for eavesdropping." These arguments are contradicted by the aforementioned authority and the plain language of the statute. At best, they involve factual disputes that cannot be resolved on a 12(b)(6) motion.

Fourth, the question of whether surreptitiously recording website activity is egregious enough to support a common law invasion of privacy claim is a question of fact. *In re Facebook,* 956 F.3d at 607 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.").

## ARGUMENT

### I.    The Court Has Specific Personal Jurisdiction Over Fullstory

The first problem with FullStory's jurisdictional arguments is that FullStory jumbles together the "purposeful availment" standard applicable to contract claims with the "purposeful direction" standard applicable to torts, while ignoring factors that do not support FullStory's position. *See* MTD at 7:2 (citing standard for contract claims); *id.* at 8:26-9:13 (focusing on FullStory's contract with Nike). As the Ninth Circuit held in a decision involving torts on the Internet, the "purposeful direction" standard "is the proper analytical framework" for torts. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("A purposeful availment analysis is most often used in suits sounding in contract … A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort."). Wiretapping claims are governed by the "purposeful direction" analysis because they sound in tort. *See S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *2 (N.D. Cal. May 15, 2019) ("*Hytto*") (applying purposeful direction test in wiretapping case); *Bergstein v. Parmar*, 2014 WL 12586073 at *3 (C.D. Cal. June 23, 2014) (same).

As set forth below, there are many cases involving wiretapping and Internet-based torts that support the conclusion that the "purposeful direction" requirement is satisfied here, as well as the remaining two requirements for specific personal jurisdiction: forum-related activities and reasonableness.

## A. The Purposeful Direction Requirement Is Satisfied

### 1. Wiretapping and Internet-Tort Cases Support The Purposeful Direction Requirement Here

The "purposeful direction" analysis "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo*, 647 F.3d at 1228 (internal quotation omitted). This analysis requires a three-part "effects test," which turns on whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

At least three courts have held "the 'intentional act' standard is *easily satisfied*" where the plaintiff alleges wiretapping claims. *Hytto*, 2019 WL 8333519, at *4 (emphasis added).[2] Plaintiff alleges FullStory intentionally wiretapped visitors to nike.com. *See* FAC, ¶¶ 14, 64, 76, 84; *see also* Fed. R. Civ. P. 9(b) (intent may be alleged "generally"). FullStory does not address or dispute this factor in its motion.

The second and third prongs of the "effects test" are satisfied here because the wrongful conduct occurred on a commercial website, nike.com, and it was foreseeable that Californians would visit that website. In this regard, there is a distinction between so-called "'passive' websites which merely display information, such as an advertisement," and "'interactive' websites which function for commercial purposes and where users exchange information." *j2 Cloud Servs., Inc. v. Fax87*,

---

[2] *See also Bergstein*, 2014 WL 12586073 at *3 ("The 'intentional act' prong is easily satisfied in this case. Parmar committed an intentional act when he allegedly recorded the parties' telephone conversations ...."); *Valentine v. Nebaud, Inc.*, 2009 WL 8186130, at *6 (N.D. Cal. Oct. 6, 2009) (holding "the first prong is easily satisfied" in a wiretapping case).

2017 WL 1535083, at *6 (C.D. Cal. Apr. 27, 2017).  Whereas torts committed on passive websites might not support jurisdiction, torts committed on interactive or commercial websites do.  *See id.* ("Personal jurisdiction is appropriate when an entity is conducting business over the internet."); *see also Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1077-78 (C.D. Cal. 1999) (the exercise of personal jurisdiction was appropriate based on the "highly commercial" nature of defendant's website).

It also must be foreseeable that California residents would visit the website.  In *Mavrix*, the Ninth Circuit reversed dismissal for the defendant after concluding the defendant, in operating a website at issue, "anticipated, desired, and achieved a substantial California viewer base." *Mavrix*, 647 F.3d at 1230.  Hence, courts may exercise personal jurisdiction when a website "with national viewership and scope appeals to, and profits from, an audience in a particular state." *Id.* at 1231; *see also CrossFit, Inc. v. Fitness Trade sp. z o.o.*, 2020 WL 6449155, at *4 (S.D. Cal. Nov. 2, 2020) (explaining the holding in *Mavrix*).

In *Oakley, Inc. v. Donofrio*, 2013 WL 12126017, at *5 (C.D. Cal. June 14, 2013), for example, the court exercised specific personal jurisdiction because the defendants "conducted regular business with California customers using [an online platform] as a conduit," engaged in a "substantial volume of transactions," and were "actively and affirmatively involved in completing transactions with California consumers." *See also Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1068-69 (S.D. Cal. 2019) (personal jurisdiction satisfied where defendant's "interactive website" targeted the California market).  Similarly, in *Hytto*, 2019 WL 8333519, at *4-5, a wiretapping case, the district court denied a 12(b)(2) motion, citing allegations that the defendant knew that many of the customers it monitored were in the U.S. *See also Bergstein*, 2014 WL 12586073 at *4 (foreseeability that a Californian would be wiretapped supported personal jurisdiction).[3]

---

[3] In contrast, personal jurisdiction may be lacking if there is "no showing that the defendant actually or constructively knew of [a] California-user base." *Good Job*

Nike.com is a commercial website used for e-commerce sales in the U.S., and Plaintiff alleges he purchased shoes on the website.  FAC, ¶¶ 4, 14.  Paragraph 14 of the FAC contains lengthy allegations that Defendants knew and foresaw that the wiretapping would impact Californians, because Californians "form a significant portion of Nike's customer base," and because of the size of the California market and economy.  FAC, ¶ 14.  Thus, as in *Mavrix*, 647 F.3d at 1231, this case involves a website "with national viewership and scope [that] appeals to, and profits from, an audience in a particular state."  The allegations that Defendants were aware of a significant customer base in California are similar to the allegations that supported jurisdiction in *Hytto*.  *Compare* FAC, ¶ 14, *with Hytto*, 2019 WL 8333519 at *4-5 ("It was foreseeable that Hytto's alleged interceptions would harm S.D. and other similarly-situated individuals and that at least some of this harm would occur in the U.S.—where Hytto knew no small number of its customers resided.").  These allegations must be accepted as true at this juncture.  *See id.* at *2.

## 2.  FullStory's Authorities Do Not Support Dismissal

FullStory primarily relies on *Walden v. Fiore*, 571 U.S. 277, 290 (2014), but *Walden* specifically explained that its decision did *not* apply to internet activity.  *See id.* at 1125 n.9 ("[T]his case does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular state.").  In fact, *Walden* supports jurisdiction here because, by FullStory's own account, the crux of *Walden* is that "the *defendant* [must] create[] the necessary contacts with the forum" (MTD at 9:8), and that is exactly what a defendant does when it wiretaps across state lines.  *See Hytto*, 2019 WL 8333519 at *3-5; *Bergstein*, 2014 WL 12586073 at *3.  Indeed, *Hytto* cited *Walden* three times when determining

---

*Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*, 458 F. Supp. 3d 1202, 1209 (N.D. Cal. 2020).  Websites that primarily target European or Asian markets, for example, might not support personal jurisdiction.  *See CrossFit*, 2020 WL 6449155 at *4; *WeWork Cos. Inc. v. WePlus (Shanghai) Tech. Co., Ltd.*, 2020 WL 83845, at *5 (N.D. Cal. Jan. 7, 2020).  That is not the case here.

the court had personal jurisdiction over the wiretapping claims in that case. *See Hytto*, 2019 WL 8333519 at *3-5.

FullStory also cites *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), but that case applied the "purposeful availment" standard for *contract disputes*. *See id.* at 1016 ("we have typically analyzed cases that sound primarily in contract—as Boschetto's case does—under a 'purposeful availment' standard"). The Ninth Circuit later held that the "purposeful direction" standard "is the proper analytical framework" for torts on the Internet. *Mavrix*, 647 F.3d at 1228. Moreover, as Judge Otero explained when distinguishing *Boschetto*, "the Ninth Circuit drew a distinction between an eBay seller who conducts a single sale and an eBay seller who uses the site to market and sell inventory. The Ninth Circuit noted that personal jurisdiction would be properly exercised over the latter." *Sennheiser Elec. Corp. v. Chutkowski*, 2012 WL 13012471, at *4 (C.D. Cal. Apr. 20, 2012). The same reasoning applies here, because FullStory's wiretapping on nike.com was not a one-time event that just fortuitously impacted Californians. *See* FAC, ¶ 14; *see also id.* at ¶¶ 10, 37-38.[4]

When citing these decisions, FullStory veers into the standard for contract claims by emphasizing that California is not where it entered into its contract with Nike or developed its software. MTD at 8:26-9:13. That is irrelevant. The "purposeful direction" analysis for torts "*focuses on the forum in which the defendant's actions were felt*, whether or not the actions themselves occurred within the forum." *Mavrix Photo*, 647 F.3d at 1228 (emphasis added); *see Schwarzenegger*, 374 F.3d at 803 (there may be personal jurisdiction "even in the absence of physical contacts with the forum."). The effects of wiretapping and other invasion of privacy claims are "felt" where the plaintiff is located. *See Hytto Ltd.*, 2019 WL 8333519, at

---

[4] FullStory's other cases are not instructive because they do not involve wiretapping or torts on the Internet, and in one instance involve contract-based claims. *See Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 604 (9th Cir. 2018); *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, 2018 WL 106894420, at *6 (N.D. Cal. July 9, 2018).

*2; *Bergstein*, 2014 WL 12586073 at *3; *cf. Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) ("at least one of the 'harms' suffered by [Nevada] Plaintiffs is akin to the tort of invasion of privacy and was felt in Nevada.").

### B. The Claims Arise Out of Forum-Related Activities

The question of whether a claim "arises out of or relates to the defendant's forum-related activities" is straightforward in a wiretapping case.  In *Hytto*, the district court followed FullStory's own authority, *Walden*, when it explained: "[t]he suit-related conduct most pertinent for the analysis at hand is Hytto's alleged interception of communications to (or from) persons in the U.S."  *Hytto*, 2019 WL 8333519 at *5; *see also Francis v. Api Tech. Servs., LLC*, 2014 WL 11462447, at *6 (E.D. Tex. Apr. 29, 2014) ("allegations of hacking" into a personal computer involve "activity that is clearly directed at the forum state"); *Bergstein*, 2014 WL 12586073 at *3 ("forum-related activities" requirement satisfied in wiretapping case).  So too here, the pertinent forum-related activities are the alleged interception of communications from California visitors to nike.com.  *See* FAC, ¶¶ 1, 14, 52.

Citing *Walden*, FullStory argues there are no forum-related activities because "[j]ust as in *Walden*, Plaintiff would have experienced the same alleged harm by visiting Nike's website and interacting with FullStory's software regardless of the state he was in at the time he visited the website."  MTD at 10:6-9.  Yet *Walden* supports Plaintiff's position—not FullStory's—for the reasons stated in Section I.A.2 above.  Further, the argument that Plaintiff would have been wiretapped regardless of what state he lives in does not support FullStory's position:  it just shows that FullStory created contacts with every state by wiretapping on a nationwide basis.

### C. The Exercise of Jurisdiction Is Reasonable

FullStory must "present a compelling case that the exercise of jurisdiction would not be reasonable."  *Schwartzenegger*, 374 F.3d at 802.  The Ninth Circuit set forth a seven-part test for reasonableness.  *See Ziegler v. Indian River County*, 64

F.3d 470, 475 (9th Cir. 1995).[5]  "No factor is dispositive, but the moving party must address each." *Hytto*, 2019 WL 8333519, at *5; *see also Ziegler*, 64 F.3d at 475 ("All seven factors must be weighed").  Here, FullStory ignores the *Ziegler* factors, and it cannot raise new arguments on reply.  *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007) ("It is well established that issues cannot be raised for the first time in a reply brief").  Furthermore, many courts have held it is reasonable to exercise jurisdiction over wiretapping claims.  *See*, *e.g.*, *Hytto*, 2019 WL 8333519 at *5; *Bergstein*, 2014 WL 12586073 at *5-6; *Francis*, 2014 WL 11462447 at *6.  FullStory cites no contrary authority.

FullStory's only argument is that if the Court exercises jurisdiction here, then FullStory would be subject to jurisdiction anywhere in the United States.  MTD at 10:14-25.  This is a burden argument, and it fails for two reasons.  <u>First</u>, speculation that some unknown person, at some unknown place and time, might later sue FullStory does not make a "compelling case" against jurisdiction *in this case*.  <u>Second</u>, FullStory offers no substantive argument for burden in this case, and in any event, burden rarely supports dismissal under Rule 12(b)(2).  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) ("unless the inconvenience [of litigating in a forum] is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction."); *accord Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007).

//

//

//

//

---

[5] The factors are: "(i) the extent of the defendant's purposeful injection in the forum state, (ii) the burden on the defendant of defending in the forum, (iii) the extent of the conflict with the sovereignty of the defendant's state, (iv) the forum state's interest in adjudicating the dispute, (v) the most efficient judicial resolution of the controversy, (vi) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (vii) the existence of an alternative forum." *Ziegler*, 64 F.3d at 475.

## II.   Plaintiff Sufficiently Alleges A Claim Under § 631(a)

### A. Defendants' Arguments That They Were Parties To The Communication Do Not Support Dismissal

#### 1.  Nike Is Liable For Enabling FullStory's Wiretapping

The text of § 631, as well as caselaw, establish that Nike can be liable for enabling FullStory's wiretapping.  Statutory interpretation begins "with the language of the statute itself." *Harris v. Harris*, 935 F.3d 670, 673 (9th Cir. 2019).  Section 631 not only prohibits wiretapping, but also imposes liability for "*any person*" who "aids, agrees with, employs, or conspires with" anyone who violates section 631(a).  Cal. Penal Code § 631(a) (emphasis added); *see also In re Lenovo Adware Litig*., 2016 WL 6277245, at *8 (N.D. Cal. Oct. 27, 2016) (denying motion to dismiss CIPA claim based solely on allegation that the defendant "aided, agreed with, or conspired with" another defendant to violate section 631).  Section 631(a) includes no exemption for participants to a conversation who permit third parties to eavesdrop on that conversation.  *See* Cal. Penal Code § 631(a).  In other contexts, the Ninth Circuit and California Supreme Court have held that the term "'[a]ny person' means exactly that, and may not be interpreted restrictively." *Bonnichsen v. United States*, 367 F.3d 864, 874 (9th Cir. 2004); *see People v. Snyder*, 22 Cal. 4th 304, 314 (2000) ("we entertain no doubt that the reference to 'any person' in section 84301 should be construed according to its plain and obvious meaning").

The decision in *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("*Moosejaw*"), is instructive because it involved facts that are nearly identical to those alleged here.  Like here, a retail website operator (Moosejaw) hired a third party software company (NaviStone) to "eavesdrop[] on [plaintiff's website] communications with Moosejaw."  The *Moosejaw* court rejected the same argument Nike makes here because even if Moosejaw could not be liable for wiretapping its own communications, it could be liable under § 631 for "enabling NaviStone's wrongdoing." *Id.* at *2.

The *Moosejaw* court followed the California Supreme Court's decision in *Ribas v. Clark*, 38 Cal. 3d 355, 363 (1985), which held that § 631 "was designed to protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone *or listen* in on the call." (Emphasis in original). "Allow[ing] third persons to eavesdrop on conversations via extensions would be a clear contradiction of the intent of section 631(a)." *Id.* That reasoning applies here because Nike "aids, agrees with, employs, or conspires with" FullStory to eavesdrop on communications on nike.com. *See* FAC, ¶¶ 61, 68 (aiding and abetting allegations); *see also id.* at ¶¶ 34-39.

Nike quotes a single sentence from *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607 (9th Cir. 2020) ("*In re Facebook*") for the proposition that it cannot be liable as a party to the communication. MTD at 11:27-12:3. However, Nike overlooks that the Ninth Circuit rejected the same argument Nike makes here and *reversed* dismissal. *In re Facebook* is consistent with *Ribas* and supports Plaintiff's position, not Nike's. In the portion of *In re Facebook* that Nike quotes, the Ninth Circuit began its analysis by quoting *Warden v. Kahn*, 99 Cal. App. 3d 805 (1979), for the *general* proposition that § 631 applies only to eavesdropping by third parties. *In re Facebook,* 956 F.3d at 607. Unlike here, *Warden* involved a case of one person recording another, with no third-party involvement. *See Warden*, 99 Cal. App. 3d at 808-809 (describing allegations). Hence, the principle cited in *Warden* did not involve aiding and abetting liability under § 631(a).[6]

The Ninth Circuit held *Warden* did not apply because Facebook secretly duplicated and forwarded information about the user's website activity. *See In re Facebook*, 956 F.3d at 608. The court explained the intent of wiretap laws is to "prevent the acquisition of the contents of a message by an *unauthorized third-party or an unseen auditor*"—like FullStory here. *Id.* (emphasis added); *see also id.* at 598

---

[6] Nike also cites *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975), but that decision is distinguishable for the same reason *Warden* is.

(explaining similar legislative purposes behind CIPA and the federal Wiretap Act). "Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule.  Therefore, we conclude that Facebook is not exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the communication." *Id.*

The same reasoning applies here.  This case and *In re Facebook* both involve website operators who surreptitiously record information about consumer's internet usage and activity.  *See* FAC, ¶¶ 1, 15-25.  This case involves "the acquisition of the contents of a message by an unauthorized third-party or an unseen auditor"—namely, FullStory.  *In re Facebook*, 956 F.3d at 608; *see also* FAC, ¶¶ 15-32 (describing FullStory's software).  The amount of information Defendants monitor is more extensive here than it was in *In re Facebook*:  Facebook only tracked website user's internet history.  *See In re Facebook*, 956 F.3d at 603.  Here, Defendants not only monitor what webpages a visitor looks at, but also everything they do while on the webpage.  *Compare In re Facebook,* 956 F.3d at 596, *with* FAC, ¶¶ 17, 21, 23, 28.  In sum, adopting Nike's argument would be reversible error under *In re Facebook*.

### 2.  FullStory Was Not A Party To The Communications

FullStory's arguments that it was a party to the communication fail for four reasons.  <u>First</u>, the argument contradicts the pleadings.  In *Hytto*, 2019 WL 8333519 at *7-8, the court rejected the same argument FullStory advances here for the simple reason that "[a]t no point" did the plaintiffs allege they communicated with the defendants.  *Id.*  Here too, Plaintiff only alleges he communicated with nike.com, and that he was unaware of FullStory's eavesdropping.  *See* FAC, ¶¶ 4, 45, 51.

<u>Second</u>, FullStory claims it was a party to the communication because Nike "employ[ed]" FullStory's services.  MTD at 1:19; 12:12-16; 13:11-14.  That argument contradicts *Moosejaw, Ribas*, and *In re Facebook*, and overlooks that § 631(a) covers scenarios where one party "employs" another to engage in

wiretapping.  *See* Section II.A.1, *supra*.  FullStory similarly argues there was no "third party" eavesdropping because FullStory simply furnished a recording device, like those used in *Rogers*, 52 Cal. App. 3d at 898, and *Membrila v. Receivables Performance Mgmt.*, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010).  *See* MTD at 13:19-14:3.  But neither *Rogers* or *Membrila* involved a third-party eavesdropper: they simply involved one person recording another with a tape recorder.  That is not the situation here, and just because FullStory furnished the wiretapping device does not rule out that FullStory *also* participated in the wiretapping.  Plaintiff alleges FullStory participated in the wiretapping.  *See* FAC, ¶¶ 2, 25, 27, 30, 45, 51.

<u>Third</u>, FullStory argues Plaintiff does not "allege that FullStory sold his data, used it for advertising purposes, or disclosed it to any third party."  MTD at 13:12-14.  Those allegations are not a required element of the claim.  *See* Cal. Penal Code § 631(a).  FullStory similarly tries to distinguish this case from *In re Facebook* by noting the defendant in that case sold personal data to advertisers.  MTD at 14:4-24.  But the Ninth Circuit never cited that fact as the basis for reversing dismissal of the CIPA claim, or any other claim.  *See In re Facebook*, 956 F.3d at 601-606.

<u>Fourth</u>, FullStory succumbs to hyperbole by claiming liability here would "criminalize" the Internet because its software is no different than a Google search function.  MTD at 14:23-15:8.  That is not a legal argument for dismissal.  Further, Plaintiff alleges that FullStory's software is *not* normal, socially accepted, or safe.  FAC, ¶¶ 26, 33, 49.  FullStory is also making factual arguments about its technology that cannot be resolved on the pleadings.  *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 841 (N.D. Cal. 2014) (defendant's factual assertions about how its technology works cannot support 12(b)(6) motion); *Moosejaw*, 2019 WL 5485330 at *3 (same)*.

## B. Plaintiff's Website Interactions Are "Communications" Under *Moosejaw, In re Facebook, and In re Zynga*

As noted in Section II.A.1 above, in *Moosejaw*, 2019 WL 5485330, at *1-2, the district court denied a motion to dismiss claims under § 631 where, like here, an

online clothing retailer hired a third-party technology company to monitor website visitors' mouse clicks, keystrokes, and other website activities.  The district court held "[plaintiff's] interaction with the Moosejaw website is communication within the meaning of section 631."  *Moosejaw*, 2019 WL 5485330, at *1.

The outcome in *Moosejaw* is supported by two Ninth Circuit decisions addressing the federal Wiretap Act and CIPA.[7]  Last year, the Ninth Circuit reversed dismissal and held that the collection of website visitors' internet history and search terms supported claims under both CIPA and the federal Wiretap Act, as they "divulge a user's personal interests, queries, and habits on third party websites."  *In re Facebook*, 956 F.3d at 604-606.  Even URL addresses may qualify as "content" because they reveal "'the particular document within a website that a person views.'"  *Id.* at 605 (quoting *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008)).

Prior to *In re Facebook*, the Ninth Circuit explained that the First Circuit had "correctly concluded" that "the content of the sign-up information customers provided to pharmaceutical websites, which included their 'names, addresses, telephone numbers, email addresses, dates of birth, genders, insurance statuses, education levels, occupations, medical conditions, medications, and reasons for visiting the particular website,'" were actionable communications under the federal Wiretap Act.  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) ("*In re Zynga*") (quoting *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003)).  "[S]earch term[s] or similar communication[s] made by the user" on the internet also qualify as "content."  *Id*. at 1109.  District courts have found a wide array of communications are covered by the Wiretap Act or CIPA, ranging from Facebook "likes" to remotely activated changes to device settings.  *See Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1115 (N.D. Cal. 2018); *Hytto*, 2019 WL 8333519, at *7.

---

[7] Defendants state, "[t]he analysis of whether something is the 'contents' of a communication under CIPA is the same as it is under the federal Wiretap Act."  MTD at 15:14-15.

Here, the information captured by Defendants' wiretapping falls within the range of information covered by the above-cited authorities. The FAC is based on public admissions by FullStory that it records not only which webpages a user visits, but also everything a user does on those webpages, everything they search for, and all the information they provide. *See* FAC, ¶¶ 17-26.

Defendants' arguments on this issue do not support dismissal for three reasons. First, in their brief, Defendants do not make any argument for dismissal to the extent the claims are based on monitoring which webpages a user visits or searches for (covered by *In re Facebook*), or a user's general website activity such as mouse clicks, keystrokes, and scrolling (covered by *Moosejaw*).

Second, FullStory mistakenly cites *In re Zynga* for the proposition that "the name, address, and subscriber number or identity of a subscriber or customer" are not "contents" that can support a claim here. MTD at 15:19-20. That interpretation flatly contradicts the portion of *In re Zynga* explaining that "names, addresses, telephone numbers [etc.]" *are* in fact actionable when provided by website users. *See In re Zynga Privacy Litig.*, 750 F.3d at 1107. But, the discrepancy is easily sorted out.

FullStory's position stems from a misunderstanding of the term "record information," which generally does not qualify as "content." *Hytto*, 2019 WL 8333519, at *6. "Record information is typically data *generated automatically* at the sending of the message and is incidental to the use of the communication device." *Id.* (emphasis added). "Unlike record information, content is generated not automatically, but through the intent of the user." *Id.* Thus, for example, if someone types in the body of an email that her name is "Jane Doe," then that information qualifies as "content"; whereas the automatic appearance of her name in the email "From" line might not. *See In re Zynga*, 750 F.3d at 1107 (discussing distinction between information typed in an email messages as opposed to "automatically generated" information, and explaining that name, address, and other information provided by website visitors in form fields are "content").

Here, there are no allegations that the names and addresses of website visitors are automatically generated, and it would be improper on a 12(b)(6) motion to draw such an inference against the Plaintiff.  *See Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) (addressing standard on 12(b)(6) motion).  It is common experience that website users provide information when purchasing items on the Internet, just like the customers who provided their information on the pharmaceutical website referenced in *In re Zynga*, 750 F.3d at 1107.  Even if FullStory is correct that *automatically generated* information about users' IP addresses, geolocation, and browser type qualify as "record information," that is not a basis to dismiss the entire claim given that FullStory does not dispute that website interactions and history qualify as content.  *See Hytto*, 2019 WL 8333519 at *7.

Third, Defendants' argument that the recordings do not capture credit card information rests on a factual dispute outside the pleadings.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) ("courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage").  Indeed, Defendants acknowledge that the study by Princeton researchers referenced in the FAC (and which they cite in their opposition) found problems with FullStory's collection of this type of information.  *See* MTD at 16:24-25.  If the allegation proves incorrect, that can be resolved later with the benefit of an evidentiary record.

**C. Nike's Privacy Policy Does Not Support Dismissal**

Defendants argue that "Plaintiff's Section 631 claim [] fails because Nike disclosed the alleged interception to Plaintiff" in Nike's Privacy Policy.  MTD at 17.  The Privacy Policy does not support dismissal for four reasons set forth below.

### 1.  Plaintiff Was Wiretapped Before There Was An Option To Agree To Any Privacy Policy

All of Defendants' arguments about the Privacy Policy ignore the allegation that Plaintiff was wiretapped from "the moment" he accessed nike.com, before having any chance to view the Privacy Policy.  FAC, ¶¶ 42, 46.  Hence, any purported notice

and consent concerning the wiretapping could not have happened, if at all, until *after* Plaintiff had already been wiretapped. *See id.* "Colloquially … consent implies permission given *in advance*." *Cothron v. White Castle System, Inc.*, 2020 WL 3250706, at *6 (N.D. Ill. June 16, 2020) (emphasis added) (finding no consent where White Castle asked plaintiff for consent to share biometric information after such information had already been shared); *cf. Kauders v. Uber Techs., Inc.*, 2019 WL 510568, at *5 (Mass. Super. Ct. Jan. 3, 2019) (plaintiff did not consent to arbitration where the terms were not disclosed until after the plaintiff created an account). Such *ex post facto* or after-the-fact consent cannot be valid under the plain definition of "consent."

### 2.  The Privacy Policy Arguments Fail Under *Nguyen*

Defendants' Privacy Policy arguments assume, without any basis in the pleadings, that Plaintiff saw the Privacy Policy. "The critical question with respect to implied consent is whether the parties whose communications were intercepted had adequate notice of the interception." *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013). A website may only bind a user to terms "where the existence of the terms was reasonably communicated to the user." *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 764 (N.D. Cal. 2019).

The Ninth Circuit's decision in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) controls here. In that case, the Ninth Circuit held, "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Id.* at 1178-79 (internal citations omitted). The rule in *Nguyen* applies where a defendant argues disclosures in its Privacy Policy furnish a consent defense. *See Moreno v. San Francisco Bay Area Rapid Trans. Dist.*, 2017 WL 6387764, at *3 (N.D. Cal. Dec. 14, 2017) (following *Nguyen* and rejecting consent

argument based on defendant's privacy policy); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072-73 (N.D. Cal. 2016) ("*Opperman II*") (same).

Plaintiff's allegations fall squarely within *Nguyen*. Plaintiff alleges the hyperlink to Nike's Privacy Policy "was buried at the very bottom of the webpage in tiny, 7.5 non-contrasting font that was designed to be unobtrusive and easy to overlook." FAC, ¶ 46. "Moreover, users are not on notice of the hyperlink to the Privacy Policy when they click the 'Place Order' button." *Id.* ¶ 47. Defendants do not rebut these allegations, nor do they argue *how* users are even supposed to know that the Privacy Policy exists.[8]

### 3. Defendants Cite The Wrong Privacy Policy

The Court has no evidence of what the Privacy Policy said when Plaintiff visited nike.com. Defendants' brief cites a version of Nike's Privacy Policy that was "last modified" in October 2020. MTD at 18:6-8. But Plaintiff alleges he visited nike.com in May 2020. FAC, ¶ 4. That alone is enough to reject Defendants' Privacy Policy arguments. *See Berman v. Freedom Financial Network, LLC*, 2020 WL 5210912, at *3 (N.D. Cal. Sept. 1, 2020) ("[A]n evidentiary dispute exists as to whether the webpage screenshots offered by defendants in support of their motion evidenced an agreement with either plaintiff.").

### 4. The Privacy Policy Does Not Disclose The Wiretapping

Even assuming the October 2020 Privacy Policy applied, Defendants' arguments still fail. "[C]onsent is only effective if the person alleging harm consented to the particular conduct, or to substantially the same conduct, and if the alleged tortfeasor did not exceed the scope of that consent." *Opperman II*, 205 F. Supp. 3d at 1072-73 (internal quotations omitted). Disputes over the scope of a privacy policy or whether it adequately discloses the conduct at issue involve

---

[8] Defendants may attempt to argue on reply that the hyperlink to the Privacy Policy was sufficient to put users on notice. But this would be raising a new issue on reply, and outside the pleadings, which is improper. *Gadda*, 511 F.3d at 937 n.2.

questions of fact that cannot be resolved on the pleadings.  *See id.* ("[A] reasonable jury could find that Yelp's Privacy Policy provisions do not explicitly address—and thus do not obtain knowing consent for—the uploading of a user's address book data for the purpose of finding friends who are already registered Yelp users"); *see also McCoy v. Alphabet, Inc.*, Case No. 5:20-cv-05427-SVK, ECF No. 43, at 11 (N.D. Cal. Feb. 2, 2021) ("*McCoy*") ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims.").

There are at least three reasons a jury could conclude that Nike's Privacy Policy does not disclose that Nike wiretapped Plaintiff in real-time using FullStory. First, Nike argues that the Privacy Policy's reference to "cookies and pixel tags" that collect information is sufficient to disclose the existence of FullStory.  But as the FAC makes clear, "FullStory's code is not a cookie at all, much less a run-of-the-mill cookie … Rather, as a 2017 study by Princeton University researchers—which specifically examined FullStory—noted, 'unlike typical analytics services that provide aggregate statistics, these scripts are intended for the recording and playback of individual browsing sessions, as if someone is looking over your shoulder.'"  FAC, ¶ 26.  The allegation that FullStory's software is not a run-of-the-mill cookie must be accepted as true at this juncture.  *See Khoja*, 899 F.3d at 1014.

Second, Nike's statement that its "cookies and pixel tags" *may* collect "information about your interaction with [nike.com] such as click behavior," does not disclose the full scope of FullStory's technology.  To begin with, "click behavior" is a vague term, and vague terms cannot support a consent defense.  *See Opperman II*, 205 F. Supp. 3d at 1074 ("[I]t is unclear whether the language in the relevant Privacy Policy provisions even applies to the Friend Finder function at issue in this lawsuit."); *Campbell*, 77 F. Supp. 3d at 848 (N.D. Cal. 2014) ("[A]ny consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the … the scanning of message content for use in targeted advertising."); *McCoy*,

Case No. 5:20-cv-05427-SVK, ECF No. 43, at 11"" ("These statements may not be understood by a reasonable user to disclose collection of her usage information on an independent third-party app.").  The term "click behavior" does not convey real-time recording of "a visitor's every move on a website," which is what FullStory's technology does.  FAC, ¶¶ 18-19.

Furthermore, as a matter of law, "[t]hat the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent."  *In re Google Inc.*, 2013 WL 5423918, at *12 (emphasis in original).  Hence, the fact that Nike states it "*may*" collect click behavior cannot support dismissal.  And disclosing that *Nike* may be collecting click behavior is not the same thing as disclosing that *FullStory* is collecting click behavior.

<u>Third</u>, Defendants cite the statement "[w]e use data about how our visitors use our Platform to understand customer behavior or preferences," but that statement is vague, general, and says nothing about FullStory recording every mouse movement, click, keystroke, and scroll a person makes on every webpage they see.  The statement also cannot support dismissal because Plaintiffs allege "the extent of data collected by [] services [such as FullStory] *far exceeds user expectations*."  *Id.* ¶ 49 (emphasis in FAC); *see also McCoy*, Case No. 5:20-cv-05427-SVK, ECF No. 43, at 10 ("'Activity on third-party sites and apps that use our services' may not be understood by a reasonable user to include data from apps that are not associated with Defendant's services.").

## III.   Plaintiff Sufficiently Alleges A Claim Under § 635

### A. Plaintiff Has Both A Private Right Of Action And Standing To Assert A Claim Under § 635

In two related arguments, Defendants argue Plaintiff lacks both a private right of action and standing to sue under § 635 "because … the mere manufacture, possession, or sale of an eavesdropping 'device' by a defendant … causes no injury to a person such as Plaintiff."  MTD at 19:18-23.  That is wrong.

Defendants' argument that Plaintiff lacks a private right of action contradicts the text of the statute. Section 635 imposes liability on "[e]*very person* who … *possesses* … or furnishes to another *any device* which is primarily or exclusively designed or intended for eavesdropping." Cal. Penal Code § 635 (emphasis added)*.* Section 637.2 provides that "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or been threatened with actual damages." *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 882 (1980); *see also* Cal. Penal Code § 637.2(b) (permitting any person to "bring an action to enjoin and restrain any violation of this chapter, *and may in the same action seek damages as provided by subdivision (a)*") (emphasis added). Thus, as shown in *Moosejaw*, there is a private right of action under § 635. *Moosejaw*, 2019 WL 5485330 at *3 (denying motion to dismiss § 635 claim). Defendants cite no contrary authority involving claims under CIPA.

Equally meritless is Defendants' argument that Plaintiff lacks standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). MTD at 20:5-6. The court in *Moosejaw* rejected the same argument, based on the same authority, when it held that the plaintiff in that case had standing to assert a claim under § 635. *Moosejaw*, 2019 WL 5485330 at *1. The court first explained that wiretapping is "not at all like the sort of 'bare procedural violation' that the Supreme Court has said [in *Spokeo*] would fall short of an Article III injury," and then explained that plaintiff "alleged injuries traceable to Moosejaw's possession and use of the [internet monitoring] device." *Id.* at *1, *3. Moreover, the Ninth Circuit has held that wiretapping claims—including under CIPA—are beyond the scope of *Spokeo*. *See In re Facebook*, 956 F.3d at 599 (holding "Plaintiffs have adequately alleged an invasion of a legally protected interest that is concrete and particularized" based on an alleged violation of CIPA); *see Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1088 (S.D. Cal. 2016) (rejecting Defendants' same argument, holding that "[a] violation of CIPA involves

much greater concrete and particularized harm than a technical violation of the Fair Credit Reporting Act ('FRCA'), the statute at issue in *Spokeo*.").

Standing is also supported by the Sixth Circuit's decision in *Luis v. Zang*, 833 F.3d 619, 637 (6th Cir. 2016), which involved a claim under § 2512(b), a provision of the federal Wiretap Act that similarly prohibits the possession of wiretap devices.  *See* 18 U.S.C. § 2512(b) (imposing liability on any person who "manufactures, assembles, [or] possesses …" wiretapping devices).  The *Luis* court first noted a split of authority as to whether mere possession alone could support a claim under § 2512(b), but ultimately concluded that possession, coupled with "knowledge" and "active[] involve[ment]" with the wiretapping, could support a claim.  *Id.* at 636-37.

As in *Moosejaw* and *Luis*, Plaintiff not only alleges that Defendants possessed a wiretapping device, but he also alleges their knowledge and active involvement in using that device to monitor his communications.  *See* FAC, ¶¶ 1, 36-39, 41.

### B. Fullstory's Code Is A "Device" That Is "Primarily Or Exclusively" Designed For Eavesdropping

Defendants argue that "there is no reason to think that FullStory's code, which Nike is alleged to have embedded on its website, qualifies as a 'device' under the statute."  MTD at 20:21-24.  Then, relying solely on *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836 (N.D. Cal. 2017), Defendants argue that even if it were a "device," Plaintiff's allegations "do not support a plausible inference that the code is 'primarily or exclusively designed or intended for eavesdropping.'"  MTD at 21:12-13.  These arguments are meritless.[9]  Plaintiff alleges that "FullStory's code is a 'device' that is 'primarily or exclusively designed' for eavesdropping.  That is …

---

[9] Notably, the portion of *Facebook* quoted by Defendants concerned whether the plaintiffs "established that they ha[d] a reasonable expectation of privacy in the URLs of the pages they visit[ed]" – it was *not in the context of a Section 635 claim*.  *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017).  Accordingly, Defendants' argument that the software code at issue is "best understood as part of the routine internet functionality that makes digital commerce possible" is inapposite.  MTD at 22:9-11.  That argument also contradicts the allegations in the FAC.  FAC, ¶¶ 26, 33, 49.

---

FullStory's code is designed to gather PII, including keystrokes, mouse clicks, and other electronic communications." FAC, ¶ 77. Nothing more is required. *See Moosejaw*, 2019 WL 5485330, at *3 ("At the pleading stage, the Court must assume the truth of Revitch's allegation that NaviStone's code is a device … primarily or exclusively designed or intended for eavesdropping upon the communication of another.") (internal quotations omitted).

In any event, courts have rejected the same or similar arguments raised by Defendants because they rest on factual disputes about how the defendant's technology operates. *See Moosejaw*, 2019 WL 5485330 at *3 (the question of whether defendant's internet tracking technology was a wiretap "device" under § 635 of CIPA is a question of fact); *cf. In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1082 (N.D. Cal. 2015) ("[E]ven if the Defendants are factually correct that the communications at issue in this case were in transitory storage on Plaintiffs' mobile devices … it is not at all apparent why there was no 'captur[ing] or redirect[ing]' of these communications contemporaneous with their transmission.").

Finally, FullStory argues that its software is not "intended for eavesdropping," but instead is intended "to help companies improve their websites." MTD, 22:6. This argument conflates what the software does with Defendants' purported motive for using that software. Few people wiretap simply for the sake of wiretapping: they will usually have a reason. If Defendants' argument could support dismissal, then any defendant could avoid liability by simply claiming they had an ulterior motive for the wiretapping. Motive, however, is irrelevant because it is not an element of a claim under § 635.

### C. Nike's Possession Of Fullstory's Code Violates § 635

Section 635 imposes liability for "possessing" a wiretapping device. Nike does not dispute that it possessed FullStory's software. Nike nonetheless argues that the term "possess" should be "limited to the actual manufacturing chain and distribution and sales channels." MTD at 23:3-5. Nike cites no authority for this theory because

1    there is none.  If the legislature wanted to impose liability only on entities who

2    manufactured and distributed such devices, then the word "possess" would simply not

3    be included in the statute.  For example, the Federal Communications Act ("FCA"), 47

4    U.S.C. § 605, prohibits piracy of cable and satellite television and contains a provision

5    similar to § 635.  In contrast to CIPA, however, § 605(e)(4) of the FCA does not

6    include the word "possess," and is expressly limited to people who manufacture[],

7    assemble[], modif[y], import[], export[], sell[], or distribute[]" regulated devices.  *See*

8    47 U.S.C. § 605(e)(4).

9           Nike's argument is premised solely on the canon of *noscitur a sociis*, the

10   principle that "a word is known by the company it keeps."  *United States v. Walker*

11   *River Irrigation Dist.*, 890 F.3d 1161, 1170 (9th Cir. 2018).  But that canon only

12   applies when a word is ambiguous.  *See United States v. Monday*, 614 F.3d 983, 985-

13   86 (9th Cir. 2010) ("[T]he doctrine of *noscitur a sociis ...* might be availing, or at least

14   relevant, if the language of the statute were ambiguous.  But it is not.").  Nike does not

15   argue that the word "possess" is ambiguous.  Here, the plain meaning of the statute

16   governs, and Nike is liable based on its possession, implementation, and use of

17   Fullstory's software code.  *See Kaufman & Broad Communities, Inc. v. Performance*

18   *Plastering, Inc.*, 133 Cal. App. 4th 26, 29, 34 (2005) ("If there is no ambiguity in the

19   language [of a statute], we presume the Legislature meant what it said, and the plain

20   meaning of the statute governs.");  *accord Ades v. Omni Hotels Mgmt. Corp.*, 46 F.

21   Supp. 3d 999, 1007 (C.D. Cal. 2014) (rejecting narrow interpretation of CIPA);

22   *Maghen v. Quicken Loans, Inc.*, 2014 WL 12586447, at *4 (C.D. Cal. Oct. 28, 2014)

23   (same).

**IV.    Plaintiff States A Claim For Invasion Of Privacy**

24

25          Defendants argue that "Plaintiff cannot plausibly allege a reasonable

26   expectation of privacy in the information he provided" because he provided the

27   information voluntarily.  MTD at 24:6-9.  Defendants also argue that even if Plaintiff

28   could allege a reasonable expectation of privacy, Plaintiff does not allege that

Defendants' conduct "constitutes an egregious breach of social norms."  MTD at 24:10-12.  These arguments fail for two reasons.

First, the arguments simply ignore Plaintiff's allegations that "[u]sers are never told that their electronic communications are being wiretapped by FullStory."  FAC, ¶ 45; *see id.* ¶ 51 ("Neither Plaintiff nor any Class member consented to being wiretapped on [nike.com], nor to have their communications recorded and shared with FullStory."); *see also* Argument § II.C, *supra*.  Plaintiffs allege that FullStory's technology "far exceeds user expectations."  FAC, ¶ 49.

Second, in *In re Facebook,* 956 F.3d at 607, the Ninth Circuit reversed dismissal and rejected a similar argument, because "[t]he ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."  Even before *In re Facebook*, numerous district courts had rejected similar arguments because they require a factual determination by the jury.  *See In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("Considering the quantum and nature of the information collected, the purported failure to respect consumers' privacy choices, and the divergence from the standard industry practice, Plaintiffs plausibly allege Vizio's collection practices amount to a highly offensive intrusion."); *Opperman II,* 205 F. Supp. 3d at 1080 (holding that "there is a triable issue of fact regarding whether Yelp's upload of the Plaintiffs' address book data was highly offensive to a reasonable person"); *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 130 (3d Cir. 2015) (finding that plaintiffs stated a claims for violation of California's constitutional right to privacy where Google's conduct was "characterized by deceit and disregard … Google's alleged conduct was broad, touching untold millions of internet users; it was surreptitious, surfacing only because of the independent research of Mayer and the Wall Street Journal.").

1

## CONCLUSION

2        For the foregoing reasons, the Court should deny Defendants' motion in its

3   entirety. If the Court determines that the pleadings are deficient in any respect,

4   Plaintiff requests leave to amend to cure any such deficiencies. *See Roney v. Miller*,

5   705 F. App'x 670, 671 (9th Cir. 2017) (lower court erred by denying leave to amend

6   after dismissing amended complaint).

7   Dated:  February 5, 2021                Respectfully submitted,

8                                           **BURSOR & FISHER, P.A**.

9

10                                          By:   */s/ Joel D. Smith*
                                                      Joel D. Smith

11

12                                          L. Timothy Fisher (State Bar No. 191626)
                                            Joel D. Smith (State Bar No.  244902)
13                                          1990 North California Blvd., Suite 940
                                            Walnut Creek, CA 94596
14                                          Telephone: (925) 300-4455
                                            Facsimile:  (925) 407-2700
15                                          E-mail: ltfisher@bursor.com
                                                       jsmith@bursor.com

16                                          *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28