EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

*Attorneys for Defendants
Nike, Inc. and FullStory, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BURHAAN SALEH, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NIKE, INC., and FULLSTORY, INC.,<br><br>    Defendants. | Civil Case No.: 2:20-cv-09581-FLA-RAO<br><br>**REPLY OF DEFENDANTS NIKE, INC. AND FULLSTORY, INC. IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)**<br><br>Hearing Date: March 5, 2021<br>Hearing Time: 1:30 p.m.<br>Honorable Fernando L. Aenlle-Rocha |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................... 1

II.   ARGUMENT................................................................................................ 1

    A.    Plaintiff Has Not Met His Burden To Show that the Court Has
        Specific Personal Jurisdiction Over FullStory. .................................... 1

        1.    FullStory Did Not Purposefully Direct Its Activities Towards
             California. ................................................................................... 1

             a)    Plaintiff's Allegations of Wiretapping Do Not
                  Establish that FullStory Committed an Intentional
                  Act............................................................................... 2

             b)    FullStory's Conduct Was Not Expressly Aimed at
                  California. ................................................................... 3

             c)    Plaintiff's Allegations Do Not Show FullStory Knew
                  Its Actions Were Likely To Cause Harm Felt in
                  California. ................................................................... 3

        2.    Plaintiff's Claims Do Not Arise Out of or Relate to Forum-
             Related Activities *by FullStory*.................................................... 4

        3.    The Exercise of Personal Jurisdiction Over FullStory in
             California Is Not Reasonable. .................................................... 5

    B.    Every Claim in the First Amended Complaint Fails as a Matter of
        Law. ..................................................................................................... 6

        1.    Plaintiff Fails To State a Claim Under Section 631. ................. 6

             a)    Defendants Did Not Violate Section 631 Because
                  They Were Parties to Plaintiff's Purported
                  Communications............................................................ 6

             b)    Defendants Did Not Collect the "Contents" of a
                  Communication.............................................................. 9

             c)    The Conduct Alleged Did Not Violate Section 631
                  Because It Was Disclosed in Nike's Privacy Policy. ..... 11

2.     Plaintiff Lacks Standing To Assert a Section 635 Claim and Fails To State a Claim Under Section 635................................ 12

     a)     Plaintiff Lacks a Private Right of Action and Standing To Assert a Claim Under Section 635.......................... 12

     b)     FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping. ................... 13

     c)     Even if FullStory's Code Was a Covered Device, Nike's Conduct Is Not Prohibited by Section 635. ....... 14

3.     Plaintiff Does Not State a Claim for Invasion of Privacy Under the California Constitution....................................................... 15

III.     CONCLUSION............................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
    46 F. Supp. 3d 999 (C.D. Cal. 2014) ............................................................. 14

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ........................................................................ 5

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ...................................................................... 2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................... 11

*Bergstein v. Parmar*,
    2014 WL 12586073 (C.D. Cal. June 23, 2014)............................................ 2

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ...................................................................... 4

*Cohen v. Casper Sleep Inc.*,
    2018 WL 3392877 (S.D.N.Y. July 12, 2018)................................................ 12

*DirecTV Inc. v. Hart*,
    366 F. Supp. 2d 315 (E.D.N.C. 2004) .......................................................... 12

*DirecTV, Inc. v. Treworgy*,
    373 F.3d 1124 (11th Cir. 2004) .................................................................... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ............................................................. 1, 7, 8, 9

*Gadda v. State Bar of California*,
    511 F.3d 933 (9th Cir. 2007) ........................................................................ 6

*Johnson v. U.S. Office of Pers. Mgmt.*,
    783 F.3d 655 (7th Cir. 2015) ........................................................................ 13

*In re Lenovo Adware Litig.*,
    2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ............................................. 12

*Maghen v. Quicken Loans, Inc.*,
  2014 WL 12586447 (C.D. Cal. Oct. 28, 2014) ............................................................. 14

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ..................................................................................... 4

*Oakley, Inc. v. Donofrio*
  2013 WL 12126017 (C.D. Cal. June 14, 2013) ............................................................ 3

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ...................................................... 1, 7, 8

*Ribas v. Clark*
  38 Cal. 3d 355 (1985) .................................................................................................. 8

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975) ....................................................................................... 11

*S.D. v. Hytto Ltd.*,
  2019 WL 8333519 (N.D. Cal. May 15, 2019) ................................................... 1, 4, 5, 7

*Schwarzenegger v. Fred Martin Motor Co*,
  374 F.3d 797 (9th Cir. 2004) ....................................................................................... 5

*Spokeo Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................... 13

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ..................................................................................... 13

*Walden v. Fiore*,
  571 U.S. 277 (2014) ..................................................................................................... 4

*Yates v. United States*,
  574 U.S. 528 (2015) ................................................................................................... 14

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ................................................................................... 10

**Statutes**

18 U.S.C. § 2512(b) ......................................................................................................... 12

Cal. Pen. Code § 631 ................................................................................................*passim*

Cal. Pen. Code § 635 ....................................................................................... *passim*

Cal. Pen. Code § 637.2(a) ...................................................................................... 12

## I.      INTRODUCTION

Plaintiff's Opposition repeatedly takes aim at strawman arguments without directly addressing the arguments Defendants actually make.  Indeed, he attempts to sidestep entirely the thrust of Defendants' arguments without ever responding to how it is a retail website should be liable for *wiretapping* when it uses software to understand and improve its website's functionality.  For the reasons explained in Defendants' Motion (Dkt. No. 30) ("Mot.") and set forth below, the Court should dismiss Plaintiff's claims.

*First*, Plaintiff quibbles with the authorities cited in support of FullStory's personal jurisdiction argument by citing authorities that are clearly distinguishable.  All of the internet-based cases Plaintiff cites where a court found it had personal jurisdiction over a defendant involved *website operator* defendants.  Plaintiff cites no case applying a similar outcome to a defendant vendor that supplied software to a website operator.

*Second*, in defending his CIPA claims, Plaintiff rebuts arguments that Defendants did not make.  Plaintiff argues at length that Nike can be liable for eavesdropping because it enabled FullStory's actions.  But Defendants do not contest Nike enabled FullStory's data collection.  Rather, Defendants argue they *both* fit within the well-settled party exception to Section 631, an argument Plaintiff never fully confronts.  Plaintiff also relies on a trio of cases *Moosejaw*, *Facebook*, and *Hytto*, that are factually distinguishable.

*Third*, Plaintiff dismisses out of hand Defendants' remaining arguments regarding his Section 635 and invasion of privacy claims, without seriously addressing them.  The Court should dismiss this case in its entirety.

## II.     ARGUMENT

### A.     Plaintiff Has Not Met His Burden To Show that the Court Has Specific Personal Jurisdiction Over FullStory.

#### 1.      FullStory Did Not Purposefully Direct Its Activities Towards California.

Contrary to Plaintiff's lead-off argument, FullStory's Motion did not apply the incorrect test for establishing personal jurisdiction in a tort matter.  Dkt. No. 31,

Opposition 2 ("Opp.").  As Defendants made clear, "the First Amended Complaint contains no allegations of *purposeful direction* by FullStory."  Mot. 8.  (emphasis added).  To establish purposeful direction, the Ninth Circuit uses the three-part "effects" test.  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).  Plaintiff fails to satisfy a single prong of this test, instead relying almost entirely on cases dealing with a *website operator's* purposeful availment of a forum while ignoring that FullStory is not such an operator.  *See* Opp. 3–5.  Looking only at the actions *of FullStory*, as the Court must, Plaintiff's allegations do not satisfy the "effects" test.

> ### a) Plaintiff's Allegations of Wiretapping Do Not Establish that FullStory Committed an Intentional Act.

Plaintiff's contention that the intentional act element is "easily satisfied" by allegations of wiretapping, is not only wrong, but ignores the "specialized meaning" of "intentional act" in the case on which Plaintiff relies.  Opp. 3 n.4 (citing *Bergstein v. Parmar*, 2014 WL 12586073, at *3 (C.D. Cal. June 23, 2014)).  According to *Bergstein*, "[t]he Ninth Circuit has held that 'intentional act' has a specialized meaning for the purpose of the first prong of the effects test."  *Id.* (citation omitted).  "Act" is narrowly defined as "denoting an external manifestation of the actor's will . . . not including any of its results, even the most direct, immediate, and intended," and "intent" is defined as "the intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."  *Id.* (citations and alternations omitted).

As the FAC alleges, FullStory's intentional acts include (i) developing software and (ii) providing its software to Nike through a voluntary partnership.  Dkt. No. 24, FAC ¶¶ 15, 34.  Thus, the "external manifestation of [FullStory's] will" was to provide software to a client.  *See Bergstein*, 2014 WL 12586073, at *3.  There is no suggestion, let alone allegation, that this external manifestation was to wiretap an individual in this forum or even enable Nike to do so.  Indeed, under the intentional act test, Plaintiff cannot use the "results, even the most direct, immediate, and intended" results of the original intent, to satisfy this prong.  *See Bergstein*, 2014 WL 12586073, at *3.

### b) FullStory's Conduct Was Not Expressly Aimed at California.

Plaintiff also has not alleged sufficient facts to show that FullStory expressly aimed its conduct *at California*.  In each internet-based case Plaintiff cites on this point, the Court addressed whether *a website operator*, not a company who supplied software to the website operator, was subject to personal jurisdiction.  For example, Plaintiff cites *Oakley, Inc. v. Donofrio*, where the court found a retailer aimed its business towards California because it "conducted regular business with California customers," "engage[d] in a substantial volume of transactions," and "actively and affirmatively" transacted with California customers.  2013 WL 12126017, at *5–6 (C.D. Cal. June 14, 2013).  Plaintiff has not shown any similar facts here as to FullStory.  The FAC alleges merely that because of California's large market, Californians must "form a significant portion of Nike's customer base."  FAC ¶ 14.  This shows nothing about whether *FullStory* has "actively and affirmatively" transacted with California customers or "conducted regular business" with Californians.  *See Oakley*, 2013 WL 12126017, at *5–6.

FullStory's only commercial activity that Plaintiff affirmatively alleges in the FAC is "entering into voluntary partnerships with various companies," one of which is Nike.  FAC ¶¶ 34–35.  Without more, it's impossible to tell where that activity was directed, and there is no hint it was directed at California.  *See* FAC ¶ 5 (Nike resides in Oregon).  And, the fact that the alleged "wrongful conduct occurred on a commercial website" does not establish that *FullStory's* conduct was expressly aimed at California, regardless of whether Nike.com is a passive or interactive website, because FullStory is not alleged to own or operate Nike.com.  *See* Opp. 3.  Plaintiff's cases finding express aiming by website operators have no bearing on a software provider such as FullStory.

### c) Plaintiff's Allegations Do Not Show FullStory Knew Its Actions Were Likely To Cause Harm Felt in California.

Plaintiff again relies on inapposite cases involving website operators, not their vendors, to attempt to show that FullStory knew that the alleged harm from its actions

---

would be felt in California. Unlike the defendant in *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011), FullStory does not "appeal[] to, and profit[] from, an audience in a particular state." *Id* at 1231. Where Nike's customers are makes no difference to FullStory. Even if Plaintiff is correct that FullStory "constructively" knew that some of Nike's customers were based in California because of the sheer size of the state's population, that does not show *FullStory* "anticipated, desired, and achieved a substantial California [customer] base." *Id.* at 1230. Absent an explanation of why FullStory should have known or considered the location of Nike's customers, Plaintiff's allegations do not satisfy the third element of the effects test.

### 2. Plaintiff's Claims Do Not Arise Out of or Relate to Forum-Related Activities *by FullStory*.

Plaintiff also fails to show that this suit "arise[s] out of contacts that [FullStory] create[d] with the forum state," as required by the Supreme Court. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). Although the *Walden* Court declined to directly address the issue of "virtual contacts" made over the internet, *see id.* at 290 n.9, *Walden* still stands for the principle that "the unilateral activity of a plaintiff" does not establish the contacts necessary for the exercise of personal jurisdiction. *Id.* at 286. Internet commerce cases are not exempt from this binding precedent. From FullStory's perspective, the fact that Plaintiff happened to be in California when he accessed Nike.com is "random" and "fortuitous" and cannot support personal jurisdiction. *See id.*

Unlike in *S.D. v. Hytto Ltd.*, 2019 WL 8333519 (N.D. Cal. May 15, 2019), which applies *Walden*, where the app owner and operator itself was the defendant accused of wiretapping, FullStory is not the operator of Nike.com. Rather, as in *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), this was a "one-time contract" for FullStory that involves California "only because that is where [Saleh] happen[s] to reside." *See id.* at 1019. FullStory's installation on Nike.com was a one-time event that later impacted, in part, Californians. FullStory does not target California customers; customers, who may happen to reside in California, choose to come to Nike.com. Furthermore, *Hytto*

involved a foreign defendant and only required the plaintiff to establish the defendant knew its conduct would reach the US as a whole, 2019 WL 8333519, at *3, a lesser burden than showing activity directed at a specific state.  Plaintiff has not alleged forum-related conduct by FullStory related to this suit, so FullStory should be dismissed.

### 3.    The Exercise of Personal Jurisdiction Over FullStory in California Is Not Reasonable.

The Court need not consider this third prong because Plaintiff has failed to meet his burden to establish the first two prongs of the Ninth Circuit's specific personal jurisdiction test.  *See Schwarzenegger v. Fred Martin Motor Co*, 374 F.3d 797, 802 (9th Cir. 2004).  If the Court did reach this prong, however, it should find the exercise of personal jurisdiction over FullStory unreasonable.

Courts recognize that finding personal jurisdiction over websites in every forum where they may be accessed is unreasonable.  *See, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.  To hold otherwise would offend traditional notions of fair play and substantial justice.") (citation omitted).  This hesitation should apply even more strongly where Plaintiff is asking to assert personal jurisdiction of a vendor that supported the website, and not the website itself.

Plaintiff faults FullStory for not marching through the Ninth Circuit's seven factors on this issue.  But those factors confirm unreasonableness here: (1) the lack of FullStory's purposeful injection is set out above and in FullStory's Motion; (2) it is burdensome for FullStory, a Georgia company with no direct ties to California, to defend here; (3) there is no claim FullStory violated the laws of its own state from its own state; (4) California does not have a particular interest in regulating FullStory in Georgia; (5) there are no particular judicial efficiencies here; (6) this district is not critical to Plaintiff's relief (its counsel has brought similar suits in every district in the State); and (7) Plaintiff's counsel could pursue FullStory in Georgia.  In short, FullStory did not

direct its activities towards California and California has no special interest in adjudicating this case, so jurisdiction over FullStory here would be unreasonable.[1]

**B.    Every Claim in the First Amended Complaint Fails as a Matter of Law.**

**1.    Plaintiff Fails To State a Claim Under Section 631.**

**a)    Defendants Did Not Violate Section 631 Because They Were Parties to Plaintiff's Purported Communications.**

Defendants' Motion demonstrated neither Nike nor FullStory could be liable for eavesdropping under Section 631 because both Defendants were a party to Plaintiff's communication and thus fit within the well-recognized party exception.  Mot. 11–15. *First*, Nike was a party because it is beyond dispute that Plaintiff alleges he "communicat[ed]" with Nike.  Mot. 12; FAC ¶ 4.  *Second*, properly understood in the context of the technology, and based on Plaintiff's own allegations, FullStory was not a third party to the communication but instead an extension of Nike itself.  Mot. 12–15. Plaintiff's arguments in response do not undermine these points.  Rather, Plaintiff spends 2.5 pages fighting an argument Defendants did not make while mostly ignoring, and asking the Court to ignore, his own allegations demonstrating that both Nike and FullStory were a party to his purported "communications."

*Nike Was A Party To The Communication.*  Plaintiff argues at length that "Nike can be liable for enabling FullStory's wiretapping."  Opp. 9–11.  But Defendants do not dispute that CIPA provides liability for enabling or aiding wiretapping.  Rather, Defendants argue that Nike cannot be liable for enabling the purported wiretap at issue here because both it *and FullStory by extension* were parties to the communication.

*FullStory Was A Party To The Communication.*  The Opposition gives short

---

[1] The Opposition asserts FullStory was required in its Motion to analyze the Ninth Circuit's seven-factor test for reasonableness and cannot now do so on reply. Opp. 7–8. Plaintiff misses the distinction between making a new argument in reply (what the cited case, *Gadda v. State Bar of California*, 511 F.3d 933, 937 n.2 (9th Cir. 2007), addressed) and offering new reasons in support of an existing argument.

shrift to Defendants' actual argument that, based on Plaintiff's own allegations, FullStory is not a third party to the communication.

*First*, Plaintiff asserts that FullStory cannot be considered a party to the communication because that "contradicts the pleadings." Opp. 11. Not so. Plaintiff alleges that FullStory offers Software-as-a-Service that allows website operators such as Nike to obtain and view through FullStory's dashboard certain information regarding how users are interacting with their website. FAC ¶¶ 9, 23, 30. Plaintiff nowhere alleges that FullStory intercepts any information for its own benefit or use.

Plaintiff argues that the *Hytto* court rejected the same argument Defendants advance here. Opp. 11 (citing 2019 WL 8333519, at *7–8). But *Hytto* did not involve an entity that was collecting information to provide it to a party to a communication. The "communication" at issue in *Hytto* was between two individuals: Person A, after giving a vibrator to Person B, could control the vibrator using an app. *Id.* The court held that the communication was thus between Person A and Person B. Defendant Hytto, unlike FullStory, was not deployed by one of these two persons. Rather, Hytto captured information on its servers for its own purposes such as "the date and time of each use of the paired Lovense device(s), the vibration intensity level users select using the app, and the email address of users sending and receiving commands." *Id.* at *1.

Here, the "communication" is between Plaintiff and Nike. And, as Defendants explained in their Motion, FullStory is alleged to be simply an extension of Nike in this scenario. If the defendant in *Hytto* had been collecting this information at the behest of Person A or Person B, and displaying that information to one of the users rather than for its own use, it would be analogous to these facts, but that is not what *Hytto* involved.

*Second*, Plaintiff, in a single paragraph, finally gets around to addressing the thrust of Defendants' argument. Plaintiff's flippant dismissal of Defendants' detailed argument that FullStory cannot be considered a third-party under CIPA because it is merely an extension of Nike does not undermine it. Plaintiff cites, without discussion, *Moosejaw*, *Ribas*, and *Facebook III* to argue that Section 631 "covers scenarios were one party

'employs' another to engage in wiretapping." Opp. 11–12. Those three cases involve drastically different facts and do not support Plaintiff's position here.

      *Facebook III*, for example, requires that courts look to the "technical context" to determine the parties to a communication. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607–08 (9th Cir. 2020) ("*Facebook III*"). The technical context of *Facebook III*, where the court held Facebook was not a party, is very different than the technical context in this case. *See id.* at 596. There, Facebook allegedly used plug-ins to track users browsing to third party websites, even while they were not signed into Facebook. *Id.* The alleged tracking was unrelated to the support of the websites containing the plug-ins. *Id.* Facebook then sold these browsing histories to advertisers. *Id.* In contrast, FullStory's software only operates while a user is on Nike's website and is used only by Nike for Nike's benefit and the improvement of its website.

      Likewise, in *Moosejaw*, the collection and use of data extended far beyond what is alleged here. There, the defendant alleged NaviStone, the software provider defendant, "scan[ned] [plaintiff's] computer for files revealing his identity" when he visited the Moosejaw website. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019). NaviStone then allegedly provided this data to direct mailers that in turn mailed advertisements to plaintiff. *See* Case No. 3:18-cv-06827-VC, Dkt. 47 at 2–3 (N.D. Cal. June 5, 2019). This "scanning" was wholly unrelated to any website functionality of NaviStone's customer and is not alleged here.

      Finally, the defendant in *Ribas v. Clark* was an attorney advising plaintiff's wife on the tax consequences of a divorce settlement. 38 Cal. 3d 355, 358 (1985). At the wife's request, the attorney listened on an extension telephone to a conversation between the plaintiff and his wife, without the plaintiff's knowledge or consent. *Id.* Unlike FullStory, a software employed by Nike, the defendant was a third party, who could "learn the contents . . . of a communication" in violation of Section 631. *See id.* at 360 (quoting Cal. Pen. Code § 631). The attorney was more than a tool used by the wife to help her

listen to her own conversation: she was an independent party listening in on a conversation surreptitiously and for her own purposes.

*Third*, Plaintiff argues that it does not matter if FullStory sold, disclosed, or otherwise used Plaintiff's data because that is "not a required element" to establish Section 631 liability.  Opp. 12.  This argument again misses the point.  As explained in the Motion and immediately above, this Court must examine modern technologies such as FullStory's in context when determining how older statutes such as CIPA apply to them.  *Facebook III*, 956 F.3d 607–08.  FullStory's lack of use of Plaintiff's data reinforces that, in the context of this technology, FullStory cannot be considered a third party but rather a vendor that steps into the shoes of one party to the communication.

*Fourth*, Defendants' Motion demonstrates that Plaintiff's theory of the case would criminalize basic internet functionality.  Mot. 14–15.  Plaintiff's only response is to call this "hyperbole."  Opp. 12.  But it's not.  Under Plaintiff's theory, any software supplier who was not the website operator, including Google in the search box example, would be liable for eavesdropping if it received data along with the website owner.  *See* Mot. 15 n.3.  This stretches CIPA too far.  The Court should dismiss Count 1.

### b) Defendants Did Not Collect the "Contents" of a Communication.

Based on settled Ninth Circuit precedent, Defendants' Motion demonstrated that there can be no eavesdropping under Section 631 to the extent Plaintiff fails to allege Defendants intercepted the "contents" of his communications.  Mot. 15–17.  In response, Plaintiff attempts to shift the Court's focus to arguments Defendants did not make and away from the fact that *he does not allege* that he provided Defendants information that could plausibly be considered the "contents" of a communication.  Opp. 13–15.

Plaintiff accuses Defendants of misunderstanding the case law and then explains the difference between content and non-content information.  *Id.*  But there doesn't seem to be an actual disagreement as to what constitutes content.  As Plaintiff himself explains, whether something is the "contents" of a communication for purposes of CIPA turns

largely on whether something is "record information," which is "typically data generated automatically at the sending of the message and is incidental to the use of the communication device" or "content [that] is generated not automatically, but through the intent of the user."  Opp. 14 (emphasis omitted) (citing *Hytto*, 2019 WL 8333519, at *6); *see also In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (contents of a communication are "the intended message conveyed by the communication.").

Defendants agree.  The problem for Plaintiff is that nowhere in the FAC does he ever allege that he ever conveyed anything to Nike.  Mot. 16.  Instead, Plaintiff alleges FullStory "captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, his location at the time of the visit, his browser type, and the operating system on his device."  FAC ¶¶ 41, 44.  Plaintiff does not seem to dispute that this constitutes non-content record information; rather, he argues that names and addresses entered into fillable forms should be considered "content."  *See* Opp. 13–14.  But Defendants nowhere argued that such information cannot be considered content; rather, they pointed out that *Plaintiff does not allege* he communicated such information to Nike.

Tellingly, Plaintiff's argument in his Opposition on this point contains no citations to the FAC, nor any statement that he himself ever communicated his name or address to Nike when he allegedly visited the site.  Instead, he only musters up the statement that "[i]t is common experience that *website users* provide information when purchasing items on the Internet."  Opp. 15 (emphasis added).

The only piece of information that Plaintiff alleges he communicated to Nike is his "payment card" information.  See FAC ¶¶ 2, 4, 44.  But that allegation is not plausible.  The very blog post Plaintiff relies on throughout his FAC to support his speculation about how FullStory functions explains that FullStory's software *excludes*—that is, does not collect—credit card information.  Mot. 16.  Plaintiff now argues the blog post notes the software's exclusion function may not prevent collection of credit card information 100% of the time.  Opp. 15.  But Plaintiff never alleges he even suspects there was something wrong with the exclusion function.  Without some factual basis to suggest *his* credit card

information was collected, over and above speculation the software *might* not have operated properly, he has failed to plausibly state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion . . . .") (citation omitted). Accordingly, the Court should dismiss Count 1 to the extent Plaintiff bases his claim on data that does not constitute the contents of a communication.

### c) The Conduct Alleged Did Not Violate Section 631 Because It Was Disclosed in Nike's Privacy Policy.

Plaintiff's Section 631 claim rests on the allegation that FullStory *surreptitiously* recorded how he interacted with Nike.com. But there was nothing surreptitious about Defendants' actions: Nike transparently informs users that Nike *and its service providers* collect usage information regarding users' interactions with Nike.com. Mot. 17–19.[2]

In response, Plaintiff once again pushes back against an argument Defendants did not make. He argues (1) he could not have *consented* to Defendants actions because the alleged wiretap began the moment he landed on Nike's website; (2) he did not affirmatively manifest his *consent* to be bound by Nike's privacy policy; and (3) any *consent* was ineffective because the privacy policy did not disclose the full scope of Defendants' actions. Opp. 16–18. But, Defendants never argued that Plaintiff consented to Nike's privacy policy. Instead, Defendants made the straightforward point that CIPA targets eavesdropping, defined as "to listen secretly to what is said in private." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (citation omitted); Mot. 17–19. Defendants do not rely on principles of consent but instead argue that Nike's disclosures negate any secretiveness, so the alleged conduct cannot constitute eavesdropping.

Nike's privacy policy fully discloses the complained of actions in providing that when a user interacts with Nike.com, "certain data is automatically collected from [a

---

[2] Nike updated its privacy policy on October 12, 2020, but the version in effect when Plaintiff allegedly visited Nike.com is materially identical. *See* Declaration of Jenna Zhang ("Zhang Decl."), Ex. A.

visitor's] device or web browser" and that "[t]his data includes: [] Device IDs, call state, network access, storage information and battery information; and [] Cookies, IP addresses, referrer headers, data identifying [a visitor's] web browser and version, web beacons, tags, and interactions with [Nike.com]."  Zhang Decl., Ex. A at 2.  This is precisely the information that Plaintiff alleges FullStory secretly collected when he visited Nike.com.  *See* FAC ¶¶ 41–44.  With such a public disclosure, Defendants' actions are not surreptitious and therefore do not amount to a violation of CIPA.

### 2. Plaintiff Lacks Standing To Assert a Section 635 Claim and Fails To State a Claim Under Section 635.

#### a) Plaintiff Lacks a Private Right of Action and Standing To Assert a Claim Under Section 635.

Defendants' Motion demonstrated that Plaintiff lacks both a private right of action and standing to assert his Section 635 claim.  Mot. 19–20.  CIPA's private right of action in the civil context extends to only those who have been injured as a result of a violation of a specific section: those who have "been injured by a violation of this chapter may bring an action against the person who committed *the violation*."  Cal. Pen. Code § 637.2(a) (emphasis added).  And while Plaintiff points to a single case finding the analogous federal statute, 18 U.S.C. § 2512(b) has a private right of action, the weight of authority is in Defendants' favor.[3]

Plaintiff again ignores the thrust of Defendants' arguments.  He does not dispute that he suffered no injury from the alleged conduct in violation of Section 635; instead he argues he can avail himself of the private right of action as to that section because Defendants allegedly eavesdropped on his communications—that is, violated Section 631.  But those allegations provide standing for Plaintiff's Section 631 claim.  They do

---

[3] *See, e.g.*, *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1129 (11th Cir. 2004); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *5 (S.D.N.Y. July 12, 2018); *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *7 (N.D. Cal. Oct. 27, 2016); *DirecTV Inc. v. Hart*, 366 F. Supp. 2d 315, 323 (E.D.N.C. 2004) (citing cases) (all finding no private right of action under the analogous 18 U.S.C. § 2512(b)).

not provide a basis for his Section 635 claim.  *See* Mot. 20.

The same is true for Article III standing.  A plaintiff "must show that he . . . suffered an invasion of a legally protected interest that is concrete and particularized" from the alleged violation.  *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted).  Plaintiff again relies on his separate purported injury allegedly suffered in connection with his Section 631 claim.  This is insufficient to show standing for a Section 635 claim because "the fact that a plaintiff has suffered an injury that is traceable to one kind of conduct does not grant that plaintiff standing to challenge other, even related, conduct."  *Johnson v. U.S. Office of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015) (no standing where alleged harm created by a different section of a statute than the one plaintiff was challenging).  The FAC's Section 635 allegations simply did not "affect . . . plaintiff in a personal and individual way."  *Spokeo*, 136 S. Ct. at 1548 (citation omitted).

### b) FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping.

As shown in the Motion, FullStory's software is not "a device" that is "primarily or exclusively designed or intended for eavesdropping."  Mot. 20–22.  Plaintiff offers little in response other than to assert this is a question of fact that cannot be decided now.  This ignores not only dictionary definitions Defendants cite, but the cases holding threadbare allegations, such as Plaintiff's description of the purported device as a "snippet of code," are insufficient to plausibly allege software is a device.  *See* Mot. 20–21.

The same is true of Plaintiff's argument that a factual record is required to determine whether FullStory's software is "primarily or exclusively" used for wiretapping.  Opp. 21–22.  There is no need for a factual record when Plaintiff's own allegations, such as his allegation that FullStory's code is used to help businesses improve their websites, demonstrate the software *is not* primarily or exclusively used for eavesdropping.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff "can plead himself out of a claim" and plead facts dooming its own argument "by including . . . details contrary to his claims").

### c)   Even if FullStory's Code Was a Covered Device, Nike's Conduct Is Not Prohibited by Section 635.

Defendants' Motion also established that Nike cannot be liable under Section 635 because the legislature's use of "possesses" in that section should not be read so broadly as to include anyone who merely has or holds a wiretapping device.  Mot. 22–23.  Plaintiff's sole response is to argue the Court should ignore statutory interpretation principles because the meaning of "possesses" is not ambiguous.  This is incorrect.

The Supreme Court has instructed that "the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole."  *Yates v. United States*, 574 U.S. 528, 537 (2015) (alterations and citations omitted).  In finding the term "tangible object" ambiguous, the Court observed that while the term "tangible object" in some contexts should be read to have "a meaning as broad as its dictionary definition," when interpreting the statute at issue in *Yates* "the context of [that section] tugs strongly in favor of a narrower reading."  *Id*. at 539.

Here, the general term "possesses" in Section 635 is surrounded by narrower and more descriptive terms revealing the ambiguity of "possesses."  As such, the Court should apply the cannon of *ejusdem generis* to find that "possesses" should be limited to the actual manufacturing chain and distribution and sales channels.  In fact, while Plaintiff argues that a different canon of interpretation, *noscitur a sociis*, should not apply for what he argues is a lack of ambiguity, that is not what Nike argued.  *Compare* Mot. 22–23 *with* Opp. 23.  In either event, as the Supreme Court noted in *Yates*, both *ejusdem generis* and *noscitur a sociis* are "related" canons.  *Id*. at 545.  Both ask the Court to interpret words based on those surrounding it, and both reveal here that "possesses" should be limited to the actual manufacturing chain and distribution and sales channels.[4]

---

[4] Plaintiff's citations to *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1007 (C.D. Cal. 2014) and *Maghen v. Quicken Loans, Inc.*, 2014 WL 12586447, at *4 (C.D.

Under that definition, Nike cannot be liable as a matter of law, given Plaintiff's allegations. The Section 635 claim as to Nike must be dismissed for this reason as well.

### 3. Plaintiff Does Not State a Claim for Invasion of Privacy Under the California Constitution.

Plaintiff's allegations are insufficient to state a claim for invasion of privacy under the California Constitution. His allegations do not plausibly suggest Plaintiff had a reasonable expectation of privacy in the mouse clicks and keystrokes allegedly provided to Nike, and nothing alleged constitutes an egregious breach of social norms. Mot. 23–24. Plaintiffs argues he has satisfied these elements because "FullStory's technology far exceeds user expectations" and whether Defendants' actions are an "egregious breach of social norms" should not be resolved at the pleading stage. Opp. 24. Wrong again.

*First*, Plaintiff's assertion that the alleged actions of FullStory and Nike at issue "exceeds user expectations" does not explain why a Nike.com user would have a reasonable expectation of privacy in the very information he or she was attempting to share with the website. *Second*, while Plaintiff suggests whether Defendants' actions constitute an egregious breach of social norms should not be resolved at the pleading stage, that argument overlooks the numerous cases Defendants cited in their Motion that found, *at the pleading stage*, that disclosure of information much more sensitive than the mouse clicks at issue here, could not constitute an egregious breach of social norms. *See* Mot. 24–25 (citing cases). Because Plaintiff has failed to allege facts to support his invasion of privacy claim, this claim should be dismissed in its entirety.

## III.   CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's First Amended Complaint with prejudice.

---

Cal. Oct. 28, 2014) do not show otherwise. Both cases dealt with the interpretation of a different section of CIPA and did not reject the reading Nike puts forth.

DATED: February 19, 2021          COVINGTON & BURLING LLP

By: */s/ Emily Johnson Henn*

EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

*Attorneys for Defendants*
*Nike, Inc. and FullStory, Inc.*